# CHARLESTON.

## Moore *et al. v.* Jennings *et al.*

Submitted June 17, 1899,—Decided November 28, 1899.

1. Extracting Oil—*Irreparable Injury—Equity Injunction.*
    The unlawful extraction of oil or gas from land, they being part of the land, is an act of irreparable injury, and equity will enjoin it. (p. 191).

2. Parties—*Reversal.*
    Where proper parties are not properly before the court, the decree will be reversed, and the cause remanded for further proceedings. (p. 189).

3. Lessors and Lessees—*Owners Necessary Parties.*
    When the lessors and lessees of one tract of land bring their suit against the lessees of an adjoining tract, to enjoin them from trespassing upon the plaintiff's premises, and from continuing to drill a well for oil and gas which defendants had commenced, as plaintiffs claim, on their premises, and praying in their bill that the boundary line between

the tracts claimed by the parties respectively be ascertained, fixed, and determined; that plaintiffs be decreed to be the owners of the land on which said well had been located by the defendants, and of all the oil and gas which could or might be obtained through said well; that the defendants be decreed to have no estate, right, title, or interest whatsoever of, in or to said land, or said oil or gas, nor any right whatsoever to the possession of said land or said well,—*held*, in such case, all the owners of the fee of both tracts are necessary parties to the suit, to enable the court to settle the rights of all parties interested or affected by the subject-matter in controversy. (pp. 188-191).

Appeal from circuit Court, Tyler County.

Bill by E. H. Jennings and others against Clint Moore and others. Judgment for plaintiffs, and defendants appeal.

*Reversed.*

Charles T. Caldwell, Okey Johnson, and McDougle & Johnson, for appellants.

W. P. Hubbard and Well & Thorg, for appellees.

McWhorter, Judge.

On the the 1st day of April, 1897, E.. H. Jennings, J. G. Jennings, R. M. Jennings, H. W. Richardson, S. C. Wells, D. H. Cox, Sarah Tustin, Minerva Tustin, Mary J. Woodburn, Noah Woodburn, Samantha Tustin, and Sarah Tustin, guardian of Emma Tustin, John Tustin, and Sarah Tustin, filed in the clerk's office of the circuit court of Tyler County, against Clint Moore, Henry Rauch, L. M. Gorham, J. F. Hall, and C. Hall, defendants, their bill in chancery, with an order of injunction indorsed thereon by Hon. H. C. Hervey, judge of the First circuit, according to the prayer of the bill. The bill alleges that the plaintiffs the Tustins and Woodburns are the owners in fee of a tract of one hundred and two acres, more or less, of land described in the bill, situate in Ellsworth district, Tyler County; that they were in full, peaceable, and lawful possession thereof; that on the 1st day of March, 1896, a legal and valid lease for oil and gas was executed by the said Sarah Tustin in her own right, Minerva Tustin, Mary J. Woodburn, Noah Woodburn, Samantha Tustin, and Sarah Tus-

tin as guardian of Emma, John, and Sarah Tustin, to plain-
tiffs H. W. Richardson and S. C. Wells, who subsequently
by deed conveyed the full equal and undivided one-half in-
terest in said lease to D. H. Cox, which lease is exhibited
with the bill; that said Richardson, Cox, and Wells entered
into an agreement with plaintiffs E. H., J. G. and R .M.
Jennings whereby, it was agreed that in consideration of
one undivided one-half interest in said lease said Jennings
would drill an oil or gas well upon said tract of land; that
in pursuance of said agreement they located and drilled a
well upon said premises, "which produced oil in paying
quantities, and made the premises and adjoining property
very valuable for oil or gas purposes;" that adjoining said
tract belonging to the Tustin heirs is another tract of two
acres, more or less, known as the "Arnett Lot," part of a
tract or parcel known as the "J. S. Haught Tract," con-
taining thirteen and one-half acres; that defendants Clint
Moore, Henry Rauch, and L. M. Gorham held what pur-
ported to be a lease for oil and gas upon the said Arnett
tract of two acres; that by virtue of said lease they entered
upon and proceeded to develop said two-acre lot for oil
and gas purposes, and made the location at which said well
for oil and gas should be bored; that, while said location
was pretended to be upon said two-acre tract, in truth and
in fact it was upon said Tustin tract, and not upon the Ar-
nett lot of two acres; that in making said location defend-
ants were trespassing upon the premises owned and con-
trolled by, and upon the rights and privileges of, plaintiffs
that defendants shortly after making the location afore-
siad were notified that they had located said well upon the
tract or parcel of land owned and controlled by plaintiffs,
and that defendants were trespassing thereon, yet not-
withstanding said notice said defendants, contrary to law,
and in violation of the rights of plaintiffs, proceeded to
erect the necessary wood rig, a large portion of which is
situated on the lands of plaintiffs, and to drill at said loca-
tion and upon plaintiffs' land a well for oil and gas; that
frequently during the progress of said drilling additional
notices were given to defendants that they were drilling
said well upon said Tustin farm, and upon the premises
owned and controlled by plaintiffs, but that notwithstand-

ing such repeated notices defendants continued to prosecute the drilling of said well; that said well is located and drilled by defendants upon the premises of plaintiffs without legal right and authority, and without the consent of plaintiffs, and if the drilling of said well should be completed it would be of great and irreparable damage to plaintiffs; that defendants had been advised by their own surveyor, and had admitted, that said well was on the land and premises of plaintiffs. It further alleged that if the well should be completed, and prove to be productive of oil or gas, plaintiffs would be unable to operate it, although on their premises, for the reason that it was located so near the boundary of their premises that. they would be unable to erect the necessary wood rig with which to further operate the well, and that the loss and damage would be irreparable and almost incalculable; and alleged the insolvency ot defendants, and that plaintiffs were without adequate remedy at law; and prayed that defendants, their agents and employes, might be enjoined and restrained from trespassing upon their said premises, from drilling said well any deeper, and from completing the same, and from doing and performing any work or labor of any kind whatever thereon, or entering thereon for any purpose, and for general relief. On the 31st day of March, 1897, an injunction was granted as prayed for in the bill, to take effect on bond being given in the penalty of two thousand dollars. On the 8th day of May, 1897, defendants Clint Moore, Henry Rauch, L. M. Gorham, J. F. Hall, and C. Hall filed their demurrer to plaintiff's bill, alleging, for grounds of demurrer, that it was not sufficient in law, and that interested and proper persons, as shown by the bill, had not been made parties to the suit or bill, and for other reasons appearing on the face of the bill, but not stated. On the——of May, 1897, plaintiffs filed an amendment to their bill, sworn to on the 18th of May, 1897, making Kora Queen a party thereto, and adding prayer to their bill as follows: "And your orators further pray that the said Clint Moore, Henry Rauch, L. M. Gorham, Kora Queen, J. F. Hall, and C. Hall be made parties defendant to this bill of complaint, and for process to issue ,and that the boundary line between

the said Tustin farm and Arnett lot be ascertained, fixed, and determined; that your orators be decreed to be the owners of the land upon which said well has been located by the defendants as herein above set forth, and of all the oil and gas which can or may be obtained through said well; that the defendants be decreed to have no estate, right, title, or interest whatsoever of, in, or to said land or said oil or gas, nor any right whatsoever to the possession of said land or said well; and that the defendants and their agents and employes be enjoined, inhibited, and restrained from trespassing upon said land of your orators, from entering thereon for any purpose whatsoever, from obtaining or taking any oil or gas from, out of, or through said well, and from selling or disposing of any oil heretofore obtained by them out of said well, and from setting up any claim, right, or title of, in, or to said land or said well, or the oil or gas heretofore obtained or which may hereafter be obtained therefrom; and for such other and further relief as their case may require, and as to a court of equity may seem just and right." On the 19th of May, 1897, defendant L. M. Gorham filed his demurrer to plaintiffs' bill, as being not sufficient in law, and not entitling plaintiffs to the relief prayed for, nor to any relief, and for other reasons appearing on the face of the bill. Also, on the same day, defendants J. F. and C. Hall filed their joint demurrer for the same reason; and because sufficient and proper persons interested in the subject-matter of the suit had not been made parties. On the 19th of May, 1897, defendants Clint Moore and Henry Rauch, not waiving their demurrer, filed their joint answer. On the same day the defendant L. M. Gorham, without waiving his demurrer, filed his answer. And on the same day the defendants J. F. Hall and C. Hall, not waiving their demurrer, filed their joint answer.

The following stipulation was filed on the 21st day of May, 1897: "And now, May 21st, 1897, it is agreed by and between the solicitors for the complainant and defendants: That the affidavits filed by each party be considered and treated as depositions, the same as if said witnesses had so testified under rule to take deposition regularly, and that this hearing upon the motion to dissolve the injunc-

tion shall be a final hearing, and the court shall at the next term enter its final decree upon the prayers of the bill in accordance with the evidence presented. If the court shall be of the opinion that the injunction should be dissolved, the order of dissolution may be entered at any time. And that the demurrers of defendants and their answers shall be taken and considered as though filed at rules regularly, and this case heard as if the cause had been regularly set for hearing. P. A. Shanor and Leo. Well, solicitors for Pl'ffs. R. L. Gregory and C. T. Caldwell, Solicitors for Def'ts." And the cause was heard on that day, and the court took time to consider the same, and on the 5th day of July, entered its final decree, overruling the demurrers and the motion to dissolve the injunction, and perpetuating the same, overruling defendants' objection to the filing of the amendment to the bill of complainants, and decreeing that the plaintiffs E. H. Jennings, J. G. Jennings, R. M. Jennings, H. W. Richardson, S. C. Wells, and D. H. Cox were the owners of the lease hold on which said well was located, and were entitled to all the oil or gas which had been, could be, or might be, obtained through said well, and that the defendants have no estate, right, title, or interest whatsoever of, in, or to said well, or said oil or gas, nor any right or title to the possession of said well or oil or gas, and that said defendants should forthwith deliver the same to the said parties entitled thereto, and that said defendants pay the costs. On the 13th day of July, 1896, defendants moved the court to set aside the said decree "for the reasons: * * * Errors appearing on the face of said decree, in overruling objection to amended bill filed, and because said decree is contrary to the law and equity in the case,"—which motion the court overruled, and to which ruling defendants excepted. From which decree defendants were granted an appeal to this court, and, among others, assigned the following errors: "First. The court erred in overruling the demurrers to the bill of complaint. (1) Because Emma, John, and Sarah Tustin, infants ,were not made parties to the bill; and, further, because there is nothing in the bill showing who they are infants of. (2) A suit by a guardian is invalid. (3) A suit by an infant can only be brought

in the name of the next friend. (4) The court erred in not sustaining the demurrer to said bill for want of necessary parties defendant thereto, to-wit, Charles Arnett and wife, grantors of the defendant, grantees named in the bill. (5) The court erred in not sustaining the demurrer to the bill because the bill fails to make defendant's lease an exhibit, and because it does not disclose who the owner of the Arnett lot is. (6) The court erred in not sustaining the demurrer to the bill because of the variance between the allegations in the bill and Exhibit A filed therewith. (7) The court erred in not sustaining the demurrer to the bill and dismissing the same on the ground that the plaintiffs had an adequate remedy at law. (8) The court erred in not sustaining the demurrer because it is not shown in the bill in what way or manner the Tustins became owners of any lands, and because there is no allegation in the bill showing what interest, if any, plaintiffs Woodburn had therein.''

Appellees insist that appellants are not prejudiced by the overruling of the demurrer, and therefore cannot complain, and cite *Clark* v. *Johnson*, 15 W. Va. 804, where it is held: "It is not sufficient, to reverse a decree, that there is error in it. The error must be prejudicial to the appellant, or it will not be reversed on his application." Also, *Handy* v. *Scott*, 26 W. Va. 710, where it is held that "an appellate court will not reverse a decree at the instance of a party not prejudiced by it,''- and contend that appellants could not possibly be prejudiced by the absence of Arnett, the lessor of appellants, and the infant Tustins, who were represented by plaintiff Sarah Tustin, their guardian, and also claiming that no one can demur for defect of parties to an action, unless his own interest requires that the defect should be cured, and cite *Newbould* v. *Warrin*, 14 Abb. Prac. 80, and *Hillman* v. *Hillman*, 14 How. Prac. 456, where it is held that it is only where the defendant has an interest himself in another being made a defendant that he can demur for want of parties, and it must appear that his interest requires that such other parties should be made defendants before he can demur. I confess that when I first wrote this case I failed to see what interest the appellants could have in Arnett being a party to the bill,

and could not see that they could possibly be interested in having the infant Tustins as plaintiffs; but when we reflect that Arnett is the lessor of appellants, they hold under him, and are liable to him for rents and royalties, he is directly interested with them,—he in the fee, and they in the leasehold,—he is a necessary party, that he may not only defend his own interests, but defend the title under which they (his lessees) hold. Although Arnett was used as a witness in the case, not being a party to the suit, he would not be bound by any decree that might be entered; and the matters involved would not be settled fully by a decree affecting his rights, and none could be rendered adversely to the defendants without affecting his interests prejudicially. In *Gregory* v. *Stetson*, 133 U. S. 579, 10 Sup. Ct. 422, 33 L. Ed. 792, it is held, "A circuit court can make no decree in a suit in the absence of a party whose rights must necessarily be affected thereby." As to the infant Tustins, under the original bill I should not consider them necessary parties. But plaintiffs filed an amendment to their bill which materially changed the whole purpose of the suit. They ask permission to amend their bill by making Kora Queen a party defendant thereto, which is done, without, however, making an allegation against him, or stating in their said amendment or bill any reason for so making said Queen a party, or showing in any way that he had any interest in the matter in controversy, either directly or indirectly; and they add to their bill a prayer as hereinbefore set out. This prayer goes much further than that in the original bill, which was simply to prevent a trespass, while the amendment involves the title to the real estate of the infants, as well as all the parties to the suit, and others not parties, as it seeks to ascertain, fix, and determine the boundary line between the Tustin farm and the Arnett lot, and prays that plaintiffs be decreed to be the owners of the land upon which said well had been located by the defendants, and of all the oil and gas from said well, and that the defendants be decreed to have no estate, right, title, or interest in said land or well, nor any right to the possession of either. To accomplish this an action at law would be the proper legal remedy, but equity, having taken jurisdiction, will go on to do complete justice,

though in so doing it have to try title, and administer remedies which properly belong to courts of law. *Yates* v. *Stuart's Adm'r*, 39 W. Va. 124, (19 S. E. 423); *Betlman* v. *Harness*, 42 W. Va. 433, (26 S. E. 271), 36 L. R. A. 566. In *Burlew* v. *Quarrier*, 16 W. Va. 108, it is held that: "All persons materially interested in the subject of the controversy ought to be made parties in equity, and, if they are not, the defect may be taken advantage of either by demurrer or by the court at the hearing. It is not necessary, although more regular, that want of parties should be made either by plea, answer, or demurrer. On the contrary, if it appear on the face of the record that proper parties are wanting, the decree will be reversed, unless the objection was expressly relinquished in the court below." *Sheppard's Ex'r* v. *Starke*, 3 Munf. 29; *Clark* v. *Long*, 4 Rand. 451; *Armentrout's Ex'rs* v. *Gibbons*,. 25 Gratt. 371; *McArthur* v. *Scott*, 113 U. S. 340, 5 Sup. Ct. 652, 28 L. Ed. 1015; *Hagan* v. *Wardens*, 3 Gratt. 315; *Hitchcox* v. *Hitchcox*, 39 W. Va. 607, (20 S. E. 595); *Donahue* v. *Fackler*, 21 W. Va. 125. In *Crickard* v. *Crouch's. Admr's* 41 W. Va. 503, (23 S. E. 727), it is held, "When proper parties are not properly before the court, the decree will be reversed, and the cause remanded for further proceedings." *Turk* v. *Skiles*, 38 W. Va. 404, (18 S. E. 561). Whether the infant Tustins were necessary parties or not, under the frame of the original bill and its prayer, their interest in the oil and gas in the land being all that was involved in the suit, and that having by the decree of the circuit court been placed in the hands of their guardian, either to receive in kind or collect the purchase money, they became necessary parties in the proceeding to fix the boundary line between the land in which they are part owners and the Arnett lot. And Arnett is also a necessary party to the proceeding, being the owner of the fee in the Arnett lot. This being true, no proper decree could be rendered in the cause in the absence of such parties. In *California* v. *Southern Pac. Co.*,. 157 U. S. 229, 15 Sup. Ct. 591, 39 L. Ed. 683, it is held that "when an original cause is pending in this court, to be disposed of here in the first instance, and in the exercise of an exceptional jurisdiction, it does not comport with the gravity and the finality which should characterize such an

adjudication to proceed in the absence of parties whose rights would be in effect determined, even though they might not be technically bound in subsequent litigation in some other tribunal." *Wilson* v. *Kiesel* 164 U. S. 248, 17 Sup. Ct. 124, 41 L. Ed. 422; *New Orleans Waterworks Co.* v. *City of New Orleans*, 164 U. S. 471, 17 Sup. Ct. 161, 41 L. Ed. 518; *Story* v. *Livingston*, 13 Pet. 359, 10 L. Ed. 200; *Conn* v. *Penn*, 5 Wheat. 424, 5 L. Ed. 125. "The want of proper parties to a bill is a good defense in equity, — at least, until the new parties are made, or a good reason shown why they are not made. At law a plea of the like nature is sometimes a good defense in bar, and is sometimes only a matter in abatement. But the plea of equity is of a far more extensive nature than at law, and it often applies when the objection would not at law have the slightest foundation. * * * But courts of equity frequently require all persons who have remote and future interests, or equitable interests only, or are directly affected by the decree, to be made parties; and they will not, if they are within the jurisdiction, and capable of being made parties, proceed to decide the cause without them. * * * It is the great object of courts of equity to put an end to litigation, and to settle, if possible, in a single suit, the rights of all parties interested or affected by the subject-matter in controversy." 2 Story, Eq. Jur. § 1526. See, also, Story, Eq. Pl. § 72. "A person may be affected by the demands of the plaintiff in a suit, either immediately or consequently. Where a person is in the actual enjoyment of the subject-matter, or has an interest in it, either in possession or expectancy, which is likely either to be defeated or diminished by the plaintiffs' claims, he has an immediate interest in resisting the demand, and all persons who have such immediate interests are necessary parties to the suit; but there may be other persons, who, though not immediately interested in resisting the plaintiff's demands, are yet liable to be affected by them consequentially, because the success of the plaintiff against the defendants who are immediately interested may give those defendants a right to proceed against them for the purpose of compelling them to make compensation, either in the whole or in part, for the loss sustained. The persons who are con-

sequentially liable to be affected by the suit must frequently also be made parties to it." 1 Daniell, Ch. Pl. & Prac. 246. Appellees, in referring to the claim of appellants that Arnett and wife, grantors of appellants, ought to be joined with them as defendants to the bill, say: "This assignment is based on an erroneous view that underlies the whole view of the case which the appellants entertain. They evidently consider this a proceeding to determine the title to the fee, as the equivalent of an action of ejectment, as brought to determine the legal title to the land. If the bill were of this nature a demurrer might well lie to it, for equity would have no jurisdiction." I must say the bill as amended by the prayer is of that nature, when it prays that the boundary line between the two tracts be "ascertained, fixed, and determined," and that plaintiffs be decreed to be the owners of the land upon which the well in controversy has been located by the defendants, and of all the oil and gas which can or may be obtained through said well, and that the defendants be decreed to have no estate, right, title, or interest therein, or to the possession of said land or well. Such a decree as is there prayed for would surely settle the rights of parties to the suit, not only to the use of the well, but in the fee to the land in question; and, to settle the boundary line between two tracts of land, certainly the owners of both tracts should be parties to the proceeding.

Appellants say the demurrer should have been sustained because appellees have an adequate remedy at law. Plaintiffs allege insolvency of defendants, and it is well settled that "equity has jurisdiction by injunction to prevent acts of irreparable injury to land, even though there is a controversy as to title between the parties." "The unlawful extraction of petroleum, oil, or gas from land (they being part of the land) is an act of irreparable injury. Equity will enjoin it. *Bettman* v. *Harness, supra.*

It is insisted by appellees that by the stipulation of submission of the cause in the circuit court the appellants waived their demurrers. It is true the stipulation on their part could almost be said to be a reckless agreement; but it does not waive the demurrers, but provides, among other things, that the demurrers of the defendants shall be taken

and considered as though filed at rules regularly, etc. The demurrers were before the court for consideration. In *Hill* v. *Proctor*, 10 W. Va. 59 (Syl., point 6), it is held that, "if it appear on the face of the record that the proper parties are wanting, the decree will be reversed by the appellate court, unless the objection was expressly waived in the court below." In the case at bar the demurrers were not expressly waived, nor even by implication. They were submitted to the court for consideration. Appellees contend that a demurrer for want of parties must name the necessary parties who have been omitted, so as to enable the plaintiff to amend his bill, and cite *Robinson* v. *Dix*, 18 W. Va. 528, where it is held that the demurrant should name the necessary parties who have been omitted; but it is further held in the same syllabus that the court ought in the final hearing of the cause, though the demurrer has been overruled, to decline to determine the cause on its merits until the necessary parties defendant have been brought before the court by an amendment of the bill, and have been given the opportunity to be heard. Appellants say it was error in not dissolving the injunction and dismissing plaintiffs' bill. "When a bill has equities in it, it should not be dismissed for defect of parties until the refusal of plaintiff to bring them in." For the reasons herein stated the decree should be reversed and set aside, and the cause remanded to the circuit court of Tyler County, that the proper parties may be brought before the court, that there may be a complete settlement of all the matters in controversy in this cause according to the principles and rules of equity.

*Reversed.*