# CHARLESTON.

STEELSMITH *et al. v.* FISHER OIL CO.

Submitted September 13, 1899—Decided January 24, 1900.

1. INJUNCTION—*Motion—Dissolution.*

   It is a general rule not to continue a motion to dissolve an injunction, unless from some very great necessity, because the court is always open to grant, and, of course, to re-instate an injunction whenever it shall appear proper to do so; and because, too, the plaintiff should always be ready to prove his bill. (p. 400).

2. PARTIES—*Lessees—Lessors.*

   When the lessees of an oil and gas lease bring their suit against the lessees of an adjoining tract to enjoin them from trespassing upon the plaintiffs' premises, and from proceeding to drill a well for oil and gas which defendants claim is on their own lease, but which plaintiffs claim is on their premises, the lessors of both leases, and all persons having an interest in the oil or gas which might be produced from the well, the drilling of which is sought to be enjoined, are necessary parties to the suit, to enable the court to settle the rights of all parties interested or affected by the subject-matter in controversy. (p. 399).

3. BILL—*Answer—Motion—Dissolution—Rule.*

   When a motion to dissolve an injunction is heard upon bill and answer and affidavits filed, the answer denying the material allegations of the bill, it is not error to consider at the same time, and refuse, a petition for a rule against the defendant for contempt for violation of the injunction order, and to enter such refusal in the same order dissolving the injunction. (p. 401).

Appeal from Circuit Court, Tyler County.

Suit by Amos Steelsmith and another against the Fisher Oil Company for an injunction. Decree for defendant, and plaintiffs appeal.

*Affirmed.*

ROBERT MCELDOWNEY and McCOY & HANES, for appellants.

F. L. BLACKMAR, for appellee.


McWHORTER, JUDGE:

Amos Steelsmith and A. J. Yoke filed their bill in the circuit court of Tyler County against the Fisher Oil Company, a corporation, alleging that they were the owners of a certain oil and gas lease executed on the 6th day of June, 1898, by C. P. Lowry and M. R. Lowry, his wife, to A. J. Yoke, who afterwards conveyed a part of same to Amos Steelsmith, on that certain tract of land and leasehold estate situate in Ellsworth district, in said Tyler County, containing 44 acres, more or less (describing the land by the names of contiguous landowners); that under the terms of their lease they had the exclusive right to drill and operate thereon for gas and oil, and took possession and proceeded to develope and operate it for oil, and drilled a well, which is a good producer; that the defendant company, operating an adjoining lease, entered upon and erected a derrick on their said lands, and were proceeding and about to drill the same and take the oil therefrom, notwithstanding the protests and notices of plaintiffs; that the location and drilling of said well upon their said leasehold to take the oil is an act of trespass, and would cause waste and irreparable injury and damage, not susceptible of complete pecuniary compensation, and would lead to vexatious litigation, if permitted to proceed; that the machinery and boiler attached to the derrick and lights used for drilling at night in said derrick erected by defendant on plaintiffs' lands were placed within a dangerous proximity to the tank, rig, and well of plaintiffs, which is a large producer, and flowing oil, and what is called "lively oil"(full of gas); that the location of said boiler and rig being within a short distance of plaintiffs' three-hundred–barrel tank, full of oil, and the gas exuding therefrom, make it not only liable to destruction from fire from said boiler and lights in the derrick, but a constant menace to the lives of plaintiffs and their employes working and managing their property; that the same is liable to

cause irreparable damage in its nature, but the danger to
life as aforesaid makes the location of the same a danger-
ous nuisance; that plaintiffs are wholly without remedy,
save in a court of equity, and if compelled to submit to the
slow, tedious process of a law court, they would suffer ir-
reparable loss and injury, and have their lives endangered
by the acts complained of.   And they pray that defend-
ant be made a party to the bill, and answer same; that pro-
cess issue; that defendant, its agents and employes, and
each of them, and all of those interested with them, be in-
hibited and enjoined from doing the things complained of,
from committing acts of trespass or waste, or in any man-
ner interfering with plaintiffs in the possession of their
lease,—and for special and general relief, and file with
their bill a copy of their lease from C. P. and M. R. Lowry.
An injunction was granted accordingly.   The Fisher Oil
Company served notice on June 21, 1899, that on the 23d
day of June it would move the court to dissolve the injunc-
tion in the cause.   On the 23d of June, plaintiffs moved to
quash the notice because the same was insufficient and not
reasonable as to time, which motion to quash was over-
ruled; but the court deeming the time not sufficient, gave
further time, until June 27th, for the hearing.   Plaintiff A.
J. Yoke presented his petition and affidavit, praying that a
rule do issue against the defendant, the Fisher Oil Com-
pany, and the employes of said company, to wit, Al. Stoner
and Hugh Daily, to show cause why they should not be
held to answer for contempt of court in violating the order
of injunction in this cause; the consideration of which mat-
ters was deferred until the 27th of June, 1899.   And on the
30th day of June the cause was brought on to be heard,
when the defendant demurred to the bill, and presented
its answer, to the filing of which plaintiffs objected.   The
objection was overruled, and the answer filed, and plain-
tiffs excepted to the answer, and the exception was over-
ruled; and defendant filed nine affidavits in support of its
motion to dissolve the injunction, with objections to the
consideration of said affidavits, and the plaintiffs filed nine
affidavits in support of their opposition to said motion, to
which affidavits defendant objected, all of which objections
were overruled, and all of said affidavits filed.   The answer

denies that C. P. Lowry and M. R. Lowry, his wife, leased to Yoke the tract of forty-four acres of land set out in the bill, but avers that the same belongs to Kate Morrow, who holds the title in fee, and that Kate Morrow and John Morrow, her husband, made an oil and gas lease for said forty-four acres to C. P. Lowry and M. R. Lowry, dated June 27, 1897, which was recorded, etc., and that by assignment of June 6, 1898, recorded, etc., said Lowrys assigned said lease (reserving to themselves a one-sixteenth interest) to A. J. Yoke, and that A. J. Yoke assigned an interest in said lease to Amos Steelsmith, and A. J. Yoke also assigned an undivided one-fourth interest in said lease to M. E. Hagan; that at the time of the institution of this suit the following named persons were interested in the lease of the land described in plaintiff's bill, to wit, A. J. Yoke, Amos Steelsmith, C. P. Lowry, M. R. Lowry, and M. E. Hagan; and that the plaintiff's bill is defective for want of proper parties as plaintiffs therein. Defendant admits that the persons who are owners of the lease of the land described in plaintiffs' bill are entitled to have the sole and exclusive right for drilling and operating for oil and gas upon said leasehold property, and admits therein having located and drilled a well thereon, which is producing a large quantity of oil; that said well is located fifty-two feet from the easterly line of the lands of M. V. Bowser; that the well had been completed some five or six weeks, and had produced over two hundred and thirty barrels per day from the time of its completion; that plaintiffs worked said well to its fullest capacity, by frequently shooting and agitating the well; admits the possession of plaintiffs of their leasehold, but denies it has entered upon their premises and proceeded to drill or operate on their land to take the oil therefrom; denies any act of trespass, or that would cause waste or irreparable injury or damage to plaintiffs; denies that defendant's machinery, boiler, and derrick which is being used to drill a well on the land of M. V. Bowser is located on plaintiffs' land, or was erected on plaintiffs' land, or that such machinery, etc., had been placed within dangerous proximity to the tank, rig, and well of plaintiffs; denies that any lights have been used or were being used at the institution of this suit for drilling at night in the der-

rick of defendant on the M. V. Bowser land. Defendant admits tnat plaintiffs' well located on the Morrow land is a large, flowing producer, and says that said well is rapidly draining the oil from the M. V. Bowser land, of which land defendant has had a lease for oil and gas purposes since March 17, 1897, upon which defendant was operating for oil and gas under said lease at the time of the institution of this suit, and was drilling the well complained of in plaintiffs' bill as an offset to the well of plaintiffs upon the Morrow land, and that the nearest producing well of defendant upon the Bowser land was about nine hundred feet distant from plaintiffs' well described in the bill; and denies that the location of defendant's boiler and rig is liable to cause irreparable damage to plaintiffs or to the lives of themselves or employes; alleges that defendant has taken all possible care and precaution to so locate and so operate the boiler used for drilling said well, and the light used at night, as to not endanger the said well of plaintiffs; that said boiler is located upon the Robert Rice farm, one hundred and sixty feet distant from plaintiffs' oil tank, and that the gaslight used by defendant is at a safe distance from plaintiffs' well; that it has kept an extra man at its boiler ever since it commenced to drill, whose duty it was to keep watch of the well of plaintiffs on the Morrow land, and described minutely the precautions taken for safety; that it had given A. J. Yoke information of its purpose to drill said well upon the Bowser lease, and requested him to put a gas stack upon their oil tank, and told him (Yoke) that it would use all care and precaution possible in drilling said well, so as not to endanger plaintiffs' well on the Morrow land, and that it has done so; avers that A. J. Yoke, when he verified the bill in this cause, well knew that defendants' well was not on the Morrow land (plaintiffs' leasehold); that defendant had committed no act of trespass upon plaintiffs' leasehold that would cause waste or cause irreparable injury or damage that would not be susceptible of complete pecuniary compensation, and that defendant had not at any time trespassed upon plaintiffs' leasehold; and avers that this suit was brought and injunction obtained for the purpose of hindering and delaying defendant in the completion of its well on the Bowser land,

so that plaintiffs could continue to drain the oil from said land through their well on the Morrow land, located within fifty-two feet of the line of defendant's leasehold.

On the hearing the court refused to issue the rule for contempt, and found, from the weight of the evidence contained in the affidavits, that the averments of the bill that the derrick of the Fisher Oil Company is located in whole or in part upon the leasehold of plaintiffs is not sustained by the proofs, but is disproved, and decreed the dissolution of the injunction, from which decree the plaintiffs appeal, and assign the following errors:   (1) It was error to read the affidavits filed by the defendant, over the objection of the plaintiffs; the said affidavits being mainly as to a certain fence claimed by the defendant to be upon the line between the lands of Morrow and Bowser, and there being no leasehold or deed of the defendant, or even any plat showing any such boundary, and nothing by which any such affidavits can be made intelligible.   There is no proper evidence in the case showing the metes and bounds of the Bowser land, or the leasehold of the defendant; no paper title showing that defendant or its grantor had any right to claim the fence mentioned in said affidavits as a line fence between the Bowser and Morrow lands.   (2) It was error to hear the case upon the answer, setting up new matter, without giving the plaintiffs time to reply by affidavit or otherwise.   (3) The court erred in dissolving the injunction upon the ground alone that, in its opinion, the affidavit showed that the derrick of the defendant was not, in whole or in part, on the lands of the plaintiffs, without also determining the right of the plaintiffs to have the injunction perpetuated on account of the threatened danger to their property by the work of drilling the well of the defendant; it appearing from both the bill and the answer that the well of the plaintiffs is what is called a "wild well," and the plaintiffs, having first produced oil at that place, being entitled to protection from any threat-ened danger to their property by the drilling of wells subsequently by other parties.   (4) The court erred in determining the weight of the evidence upon the question of whether or not the derrick of the defendant was in whole or in part on lands of the plaintiffs, because the defendant

nowhere files any paper showing any metes or bounds of their premises, nor is there any proof that the defendant has any lease upon the property of Virgil Bowser, save the naked statement of the answer, when at the same time the plaintiffs show by the affidavit of two surveyors, M. A. Brast and J. J. Sammons, who surveyed the line according to the title paper shown by the plaintiffs, that the derrick was at least eleven feet upon the lands of the plaintiffs. (5) The court further erred, also, in overruling the exceptions to the answer of the defendant, when the same is insufficient for the reason that it does not, by exhibit or otherwise, show the location of the leasehold of the defendant. (6) The court erred in prematurely hearing the cause and dissolving the injunction. (7) The court erred in considering the petition, and affidavits in support of same charging contempt by defendant, praying for a rule, together with the motion to dissolve the injunction, and disposing of same by the same order by which the injunction was disposed of.

This is a contest between plaintiffs and defendant for the supply of oil beneath the surface near the line between two leasehold estates. Plaintiffs already have a large producing well upon their land, which is supposed to be, and probably is, drawing the oil from the premises leased by defendant, while defendant is attempting to drill a well on its said lease in close proximity to plaintiffs' well, to offset the well of plaintiffs, to "protect its lines," and save to itself the oil it may get. The main question between the parties is the location of the line between the two properties. Plaintiffs' bill alleges that they had had quiet and peaceable possession of the land claimed by them, and their possession had not been interfered with until a recent date, when the defendant, operating an adjoining lease, entered upon, and erected a derrick on plaintiff's land, and was proceeding to drill the same and take the oil therefrom. This the defendant denies. The parties file affidavits concerning the location of the line between them. It is contended by appellants that the affidavits were mainly as to a certain fence claimed by defendant to be on the line between the lands of Morrow and Bowser; there being no leasehold or deed of the defendant, no proper evidence in

the case showing the metes and bounds of the Bowser lands, and no paper title showing that defendant or its grantor had any right to claim the fence as a line. This was unnecessary, when the bill alleged that it held the adjoining land by lease, and was operating it. All that was to be done was to ascertain the line between the two leases, and this the affidavits on either side undertook to establish. When the line of plaintiff's lease was established, it established the Bowser line as well; and some of the affidavits were to the effect that Bowser and Morrow both agreed that the fence was on the line, and had been for nearly twenty years regarded by both parties as the line, working up to it on their respective sides all that time, and treating it as the division line between the two properties. True, John Morrow, in his affidavit, claims that the fence is on his wife's land, claiming that he and Bowser had the line run, and it was then agreed by Bowser that the fence at that end was wholly on the Morrow land; but he is contradicted by Bowser and several disinterested witnesses. J. C. Warner, county surveyor of Tyler County, says he surveyed the line on June 19, 1899, and that both Bowser and John Morrow were present. He asked them about the fence that he found on the line between them, and they said they had always recognized it as the line fence, and there never had been any dispute over this line between them, and they had farmed up to this line on both sides. He further says: "I found a heavy fence row that had grown up—of brush and saplings—along the line between the lands of Kate Morrow and M. V. Bowser, as I traced the line. The derrick situated upon the land of M. V. Bowser is wholly on his land." He says that John Morrow, the husband of Kate Morrow, was present at the time he ran the line, and sighted through his compass along that line, and remarked that the line did not hit the derrick of the Fisher Oil Company on the Bowser land. Warner says he has been acquainted with that line, as a surveyor, since the time it was settled by a lawsuit in the Tyler circuit court between Martin L. Bowser, plaintiff, and Mercer and Roberts, defendants,—he thinks, between the years 1867 and 1872.

As to the second assignment: The defendant sets up

no new matter, except that which refers to the fact that the lessors of A. J. Yoke were not the owners of the forty-four acres of land leased, but that it was owned in fee by Kate Morrow, who had leased the same to C. P. Lowry and M. R. Lowry, and that Yoke had assigned an interest in his lease to M. E. Hagan, and that the Lowrys and Hagan were necessary parties to the bill; and, as to the said C. P. Lowry and M. R. Lowry, they appeared on the face of the bill to be necessary parties, and the bill was defective for that reason; and the lessor of the defendant, the Fisher Oil Company, which the bill alleged was operating an adjoining lease, was also a necessary party defendant. *Moore* v. *Jennings, supra.* (34 S. E. 793). Appellants cite *Grobe* v. *Roup*, 46 W. Va. 488, (33 S. E. 261), where it is held "error to dissolve an injunction on affidavits, merely, when by the pleadings the burden of proof is on the defendant, moving such dissolution, as the plaintiff has the right to cross-examine defendant's witnesses and rebut their testimony." This cannot apply in the case at bar, for the reason that under the pleadings the burden is on plaintiffs, as the allegations are denied by the answer, and plaintiffs are required to prove their allegations.

Third: That the court dissolved the injunction on the ground alone that in its opinion the derrick of defendant was not in whole or in part on plaintiffs' land, without also determining the right of plaintiffs to have the injunction perpetuated on account of the threatened danger to their property, etc. The cause was heard upon the bill and answer, the affidavits, and upon the motion to dissolve the injunction. The answer denied all the material allegations of the bill not admitted by defendant. The only questions involved are that of the location of the line, and the threatened danger to the property and works of the plaintiffs. As to the allegation of threatened danger, the defendant "denies it fully, fairly, plainly, distinctly, and positively." *Hayzlett* v. *McMillan*, 11 W. Va. 464. Affidavits were filed touching that question, and which were considered. It was unnecessary for the court to state any reason for dissolving the injunction. It was sufficient to show upon what it was heard, and that in consideration thereof the court dissolved or refused to dissolve the injunction, as the

judgment of the court might be; and, if the record justifies the action of the court, it will be sustained by the appellate court.

Fourth assignment: That the court erred in determining the weight of evidence upon the location of defendant's derrick,—whether it was in whole or in part upon the lands of plaintiffs,—because defendant files no paper showing any metes and bounds of the premises, and there is no proof that defendant had any lease upon the property of Bowser, save the naked statement of the answer, etc. The bill alleges that the derrick is on plaintiffs' land. The answer denies it flatly and fully. The affidavits overwhelmingly support the answer. As to the defendant having a lease on the Bowser property, the bill alleges it, and the answer admits it and avers it. Besides, it is proven by some of the affidavits. It seems to me that plaintiffs will hardly be permitted to dispute the allegation of the bill, especially when it is admitted by defendant.

The fifth assignment has been disposed of with the first and fourth.

Sixth: That the court erred in prematurely hearing the cause and dissolving the injunction. When the parties appeared in pursuance of notice of motion to dissolve the injunction on the 23d day of June, 1899, plaintiffs claimed that the notice was not reasonable as to time, and moved to quash it on that ground. The court overruled the motion, but postponed the hearing to give plaintiffs further time, and the cause came on to be heard on the 30th day of the same month. In *Horn* v. *Perry*, 11 W. Va. 694 (Syl., point 3): "It is a general rule not to continue a motion to dissolve an injunction, unless from some very great necessity, because the court is always open to grant, and, of course, to reinstate, an injunction whenever it shall appear proper to do so; and because, too, the plaintiff should always be ready to prove his bill." *Radford* v. *Innis*, 1 Hen. & M. 8; *Arbuckle* v. *McClanahan*, 6 W. Va. 101. In *Western Min. and Mfg. Co.* v. *Virginia Cannel Coal Co.*, 10 W. Va. 250, (Syl., point 11): "A bill of injunction is fatally defective which does not aver good title in the plaintiff, contains no charge of insolvency against the defendants, does not show that irreparable damage will result if the injunction

is denied, and prays an injunction to restrain a naked trespass upon real property." *Cox* v. *Douglass*, 20 W. Va. 175; *Moore* v. *Jennings*, before cited; *Watson* v. *Terrell*, 34 W. Va. 406, (12 S. E. 724); *Hale* v. *Railroad Co*, 23 W. Va. 454; *Bettman* v. *Harness*, (W. Va.) 26 S. E. 271, 36 L. R. A. 566; *Allison & Evans' Appeal*, 77 Pa. St. 221; *Kelley* v. *Oil Co.*, 57 Ohio St. 317, 49 N. E. 399, 39 L. R. A. 765.

In support of the seventh assignment, -- that it was error to consider the petition, and affidavits in support thereof charging contempt, and praying for a rule, with the motion to dissolve the injunction, and to dispose of the same in the same order by which the injunction was disposed of,—appellants cite *State* v. *Irwin*, 30 W. Va. 404, (4 S. E. 413), where it is held that after a rule has been issued for contempt, "served on the defendant, and returned to the court, then the contempt proceeding should be entirely separate from the chancery suit, and placed on the docket, entitled, 'The State of West Virginia, at the Relation of' the party at whose instance it was issued against the offender, and be prosecuted on the law side of the court to judgment," etc. This is only after the proceeding in contempt is begun, and process issued and served. In the case at bar the court had the whole case before it, and it was competent for it to decide whether, under the circumstances of the case, a proceeding for contempt should be instituted by the issuance of a rule; and, having decided not to issue the rule, there was no prosecution to take its place on the law side of the court to be prosecuted to judgment. The decree of the circuit court is affirmed.

*Affirmed.*