# CHARLESTON.

### JAMES W. GALFORD *v.* D. M. HENRY.

### Submitted March 13, 1923. Decided March 20, 1923.

1. INJUNCTION—*Bill to Stay Waste Must Allege That Defendant in Possession has Instituted or is About to Institute Suit in Ejectment to Try Title.*

   A bill for an injunction to stay waste and the cutting of timber from land of which the bill alleges the defendant is in possession claiming right and title thereto, must allege that plaintiff has or is about to institute a suit in ejectment to try the title, and show that the injunction prayed for is to preserve the *status quo* until such right and title may be determined. (p. 407).

2. SAME—*Where Defendant Sought to be Enjoined Claims Title Under Owners of Land, They Should be Made Parties.*

   And where the defendant sought to be enjoined claims right and title to the timber only from and under the owners of the land, and files his answer, and requires it, the bill should be amended and process issued thereon so as to bring before the court such absent defendants, so that the rights of all parties may be finally adjudicated respecting the title to the land. (p. 407).

Appeal from Circuit Court, Pocahontas County.

Suit by James W. Galford against D. M. Henry. From a judgment for plaintiff, defendant appeals.

*Reversed and remanded.*

*L. M. McClintic,* for appellant.
*Andrew Price,* for appellee.

MILLER, PRESIDENT:

Alleging fee simple title in himself to a tract of 185 acres on Back Alleghany Mountain, in Pocahontas County, set off to him by a deed of partition of a larger tract between him and his brother, J. H. Galford, acquired by them from F. K. Moore and wife, plaintiff further alleges that he has held and owned said tract by virtue of said deeds for many years. He further alleges that defendant Henry has recently set up some sort of a claim to a portion of said tract and has located a saw mill on land near to said tract and claims he owns timber within plaintiff's lines, but upon what right or title such claim is set up plaintiff does not know, but he alleges such claim is not supported by any valid or just title, as plaintiff has the only subsisting title to said land.

The bill further alleges that pursuant to this claim of title defendant has entered upon and taken possession of said land and is now in possession thereof and is cutting and destroying the standing and growing timber thereon and threatens to continue to do so, and will do so until the said land is denuded of its timber, unless restrained; that the cutting of said timber constitutes irreparable injury to said land, and that if allowed to continue defendant will inflict irreparable injury upon plaintiff by destroying the chief value of said property. It is further alleged "that defendant is a man of little or insufficient property to pay any judgment for damages against him and for this reason is for all intents and purposes insolvent so far as this suit and the nature of the action is concerned, which constitutes another reason that the plaintiff will be irreparably injured if said cutting, wasting and removing of said timber is allowed to continue."

These in substance are the allegations of the bill, and the only relief sought is that Henry, his agents and employees be enjoined and restrained "from further cutting any of the standing and growing timber on said land, and from the removal of any timber cut down by him, until the further order of the court," and for general relief.

There was a preliminary injunction granted *ex parte*, in accordance with the prayer of the bill, which on final hearing, on April 28, 1921, on bill and answer and exhibits therewith

and the general replication to said answer, and upon the depositions and proofs taken and filed in the cause, the court perpetuated, and referred the cause to a commissioner to take an accounting of the timber cut and the value thereof and to report any other matters deemed pertinent or required by any party in interest.

The answer of the defendant admits that plaintiff has land on Back Alleghany Mountain, but denies that he has been cutting timber on lands owned by plaintiff. He admits that it is true he has a mill situated on said mountain, yet he says that the timber he has been cutting was under a contract made by him with H. F. and Frances Cromer, on a tract of 135 acres, a copy of which contract he exhibits with his answer. He alleges that the tract of 135 acres was acquired by said Cromers from the West Virginia Pulp & Paper Company, by deed of January 8, 1907, which said paper company acquired from John G. Luke, by deed of September 18, 1902, and which said Luke acquired from E. M. Arbogast, by deed of April 1, 1899, and the same which said Arbogast acquired from W. A. Bratton and wife, by deed of April 1, 1899; and that also by deed of the same date the said tract was conveyed to said Arbogast by L. M. McClintic and wife, and which was conveyed to said McClintic by S. L. Brown, clerk of the county court of Pocahontas County, by deed of March 29, 1899, and was by said McClintic, as special commissioner, conveyed to said Bratton by deed of October 13, 1897. The answer continues to deraign title to the 135 acre tract back to a deed from Jacob H. Arbogast to Jacob Sheets, of April 28, 1877, and alleges that in that year said Sheets took actual possession thereof, and that he and those who have held under him have had actual, exclusive and continuous possession thereof from that date until the present time, and have had the land regularly assessed and paid taxes thereon.

The answer then proceeds to show by what right and title papers plaintiff acquired title to the land actually owned by him, referring to the deeds, and alleges that defendant claims no timber on the land owned by plaintiff.

From these pleadings and proofs the real controversy is over the true location of what is called the "Slaven Line" and the true location of certain other lines and corners called

for in the papers, and on which the evidence seems very conflicting.

The bill, as we observe, is wholly wanting in any allegation that plaintiff has or is about to institute suit in ejectment to try his right and title to the disputed boundaries. Having alleged that defendant was in possession of and claiming the land and timber, the bill therefore presents no proper case for the application of injunctive process. Where a proper case is presented therefor, of course, as our cases hold, an injunction to stay the hand of the party in possession from cutting the timber and to preserve the *status quo* is proper, but without such showing an injunction will not lie. *Hannah* v. *Wilson Lumber Company,* 92 W. Va. 104, 114 S. E. 506; *Pardee & Curtin Lumber Company* v. *Odell,* 71 W. Va. 206, 76 S. E. 343, and other cases cited.

Another point of error relied on for reversing the decree is, we think, well founded in law and in fact. It appears from the record that H. F. Cromer and Frances Cromer are owners of the 135 acres, the defendant Henry owning only the timber, and that he holds under the Cromers. In such a case the owners of the land should be made parties to the bill. *Moore* v. *Jennings,* 47 W. Va. 181. It is the right of a defendant when two or more persons are interested in the subject matter of the suit, to have them all brought in, that all may be concluded by the decree. *Coffman* v. *Hope Natural Gas Company,* 74 W. Va. 57.

Our conclusion is that the decree should be reversed, the injunction dissolved, and the cause remanded, with leave to plaintiff, if so advised, to amend his bill so as to conform to the rules of practice applicable in such cases, if he shall do so within such reasonable time as the circuit court shall prescribe, and then to apply for a reinstatement of the injunction to preserve his rights to the timber involved; and if not so amended the bill should then be dismissed. *Waldron* v. *W. M. Ritter Lumber Company,* 70 W. Va. 470; *Pardee, et al.* v. *Camden Lumber Company, Id.* 68.

*Reversed and remanded.*