# White *et al.* v. Kahn.

*Contest of Garnishee's Answer.*

1. *Garnishee's answer; effect thereof.*—If a garnishee's general denial of indebtedness to the defendant is inconsistent with the particular facts stated by him on his oral examination, such facts overcome the general denial; and if they clearly and distinctly disclose the liability of the garnishee, the plaintiff will be entitled to judgment without contesting the answer, since the facts stated will be considered as strictly true.

2. *Same; stock subscription.*—The answer of the garnishee disclosed that, at a meeting held for the purpose of seeing how much stock would be taken in a railroad company about to be incorporated, a paper was handed to each member present to put down the amount of stock he wanted, "with the privilege to change the amount at any time" he might wish; that the garnishee signed this paper, saying he would take $5,000 of the stock; that afterwards, and before the time to pay said subscription, the garnishee told the president of the then organized company, he would only take $2,500 of the stock, for which amount he subsequently executed to the company his note, showing on its face that it was for the garnishee's entire subscription to the capital stock of said company; that this note was accepted by the company, and after assignment was paid to the assignee by the garnishee; that the garnishee never signed any book of subscription for stock, and the company never claimed of him any more than the $2,500, for which he gave his note; that the persons at the meeting, when he signed the paper were not a board of incorporators, appointed to receive subscription to the stock of the company, a declaration of incorporation not then having been filed. *Held*: That the paper signed by the garnishee was not a contract of subscription for $5,000, which could have been enforced by the company; and that the garnishee was not liable thereon, and that plaintiff was not entitled to judgment against the garnishee for $2,500, as the balance due on the $5,000 subscription.

3. *Parol evidence; when admissible.*—Antecedent and contemporaneous oral stipulations are not admissible in evidence to alter or vary the terms of a written contract; but when the execution of the writing is the subject of inquiry, what was said and done at the time of the supposed execution thereof are vital facts to the issue involved, and are admissible in evidence.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN R. TYSON.

[White *et al.* v. Kahn.]

On October 7, 1892, the appellants, J. M. White and H. C. Tompkins, brought an action of assumpsit in the circuit court of Montgomery county, against the Alabama Terminal & Improvement Company, "a corporation organized under the laws of Alabama," to recover $6,000 due by promissory note made by said defendant. On November 28, 1892, an ancillary garnishment on a summons was issued, requiring Maurice Kahn, the appellee, to answer as garnishee, whether or not he was indebted to the defendant. On January 12, 1893, the plaintiff recovered a judgment againt the defendant, the Alabama Terminal & Improvement Company, for $6,200. At the same term of the court the garnishee answered in writing, denying very fully any indebtedness to the defendant, but on motion of the plaintiff he was required to answer orally. The facts as disclosed by his oral answer are stated in the opinion.

The paper, which the garnishee testified he signed when in the office of Mr. Wiley, was in words and figures as follows: "We, the undersigned, subscribe to the capital stock of The Alabama Terminal and Improvement Company the amounts opposite our respective names:

| | |
|---|---|
| David Weil, Montgomery, Ala | $ 1,000.00 |
| R. P. Tattman and associates, Montgomery, Ala | 23,000.00 |
| Fox Henderson, Troy, Ala | 15,000.00 |
| Joel D. Murphy, " " | 5,000.00 |
| L. & W. J. Henderson, Troy, Ala | 10,000.00 |
| J. C. Haas, Montgomery, Ala | 5,000.00 |
| S. Roman, " " | 4,000.00 |
| M. Kahn, " " | 5,000.00" |

On the facts disclosed by the garnishee in his oral answer the plaintiffs moved the court for a judgment against him for $2,500. This motion was overruled, and the plaintiffs excepted. On motion of the garnishee he was discharged, and judgment was rendered accordingly, and the plaintiffs duly excepted to this ruling. The present appeal is prosecuted by the plaintiffs, and the judgment rendered by the court, upon the answer of the garnishee, is assigned as error.

ROQUEMORE, WHITE & DENT and TOMPKINS & TROY,

for appellants.—1.   Section 2972 of the Code, as amended, (Acts 1888–89, p. 94,) authorizes a suit by garnishment against stockholders of a corporation for unpaid subscriptions, in favor of any creditor.   If the answer of the garnishee denies indebtedness to the defendant, but states facts upon which the law will predicate indebtedness, judgment should be rendered against him on the answer.—*Mann v. Buford*, 3 Ala. 312; *Johnson v. Spaight*, 14 Ala. 27.

2.   If the fact of an unsatisfied judgment against the defendant for an amount equal to, or in excess of, the amount disclosed by the garnishee's answer is shown, the appellate court will render judgment against the garnishee on his answer, if the lower court should have done so.—*Buford v. Mann*, 3 Ala. 312.   Garnishment against a stockholder will lie at the instance of a creditor of a corporation, although the corporation might not be able to maintain debt or *indebtitatus* assumpsit for the recovery of the amount due by such stockholder.— *Davis v. M. C. & F. Co.*, 101 Ala. 127.

3. All verbal agreements prior to or contemporaneous with the signing of a written contract of subscription to stock of a corporation are merged in the contract; and if not mentioned in the subscription contract they are not a part of such contract.—*Wintzburger v. Anniston Rolling Mills*, 94 Ala. 640.   Such conditions embodied in the contract would be invalid as against creditors.— *Burke v. Smith*, 83 U. S. (16 Wall.) 394; 131 U. S. 132.

4.   A corporation has no legal power to cancel the contracts of subscribers to its capital-stock.—Cook on Stocks & Stockholders, § 168, and notes;   *Burke v. Smith*, 83 U. S. (16 Wall.) 394; *Upton v. Tribilcock*, 91 U. S. 45.   Such release or cancellation is not only *ultra vires*, but it is fraudulent as against the State and persons who may become creditors of the corporation.   A subscriber who has become unconditionally bound by a contract of subscription can not discharge himself therefrom except by payment.—*Hawley v. Upton*, 102 U. S. 314.

W. A. GUNTER, *contra*.—1.   The contract of membership in a corporation, which can only result from ownership of stock, is never completed and binding until the corporation accepts it.—1 Spelling on Private Corp., §§

296, *et seq.; Starrett v. Rockland Ins. Co.*, 65 Me. 374, and authorities cited; *E. P. R. Co. v. Vaughan*, 14 N. Y. 553; *B. & J. R. R. Co. v. Gifford*, 87 N. Y. 294; Pollock's Prin. of Const., (Nald's Ed.), 4—5; 1 Beach on Corp., §§ 61, 64. The acceptance like the act of any other person, requires no particular formality—any act "which clearly signifies that a subscription is or has been recognized as valid is sufficient." And, of course, if the acts showing the recognition of a subscription show that the recognition is for a limited sum, they operate affirmatively to show that it is for no more. ·

2. The paper in this case, exhibited as a complete contract of subscription, was a *nudum pactum* until accepted, and certainly "was in no sense a subscription of stock."—*Starrett v. Rockland Ins. Co.*, 65 Me. 374; *Knox v. Childersburg L. Co.*, 86 Ala. 183; 1 Spelling on Priv. Corp., § 299; *Parker v. N. C. M. R. R. Co.*, 33 Mich. 23; Pollock's Prin. of Const., 4-5.

3. "A convenient test of the question, whether one is liable as a stockholder, is the position in which the contract in question has placed the corporation. If it is bound by its terms to receive the party as a member for purposes of voting, or enjoying other privileges of membership, it is a valid subscription.—1 Spelling on Priv. Corp., § 318.

4. The Ala. Ter. & Imp. Co. could hardly be compelled to admit the garnishee as a subscriber, on the facts disclosed in this case, for $5,000; when it is not shown that it ever heard of the proposition, or saw the paper, and when the garnishee accepted and carried out a modified proposition of membership for $2,500. "Corporations like natural persons must live up to the rules of common honesty"—rights and duties and estoppels must be common, reciprocal and mutual.—*Parish v. Wheeler*, 22 N. Y. 494; *Parker v. N. C. M. R. R. Co.*, 33 Mich. 23.

HEAD, J.—This appeal is from the refusal of the circuit court to grant plaintiffs' motion for judgment against the garnishee, Kahn, on his answer. The plaintiffs accepted the answer as true—interposing no contest—and relied upon its terms, as showing, in judgment of law, an admission of indebtedness due and owing by the garnishee to the defendant, The Alabama Terminal and Improvement Company. The sole question then is, does

the answer show an admission of indebtedness entitling plaintiffs to judgment? The answer was given orally, upon the stand, and reduced to writing, under the eye of the court. Its general response is a positive, complete denial of any indebtedness whatsoever; but, as required by plaintiffs, who were present, at the time it was made, the garnishee disclosed the facts, in detail, in reference to a particular transaction supposed to have been had by him with the defendant, and these facts, as so disclosed, the plaintiffs insist, explain and overcome the general denial, and show that, in law, the garnishee was indebted to the defendant. It is a principle of law that such a denial may be so overcome, and the plaintiff, if the facts warrant, be entitled to judgment upon the answer, without contesting it; but, in order to that result, the particular facts stated must clearly and distinctly disclose the liability of the garnishee. The facts stated will be taken as strictly true.—*Allen v. Morgan,* 1 Stew. 9 ; *Robinson v. Repelye,* 2 Stew. 86 ; *Presnall v. Mabry,* 3 Port. 105 ; *Smith v. Chapman,* 6 Port. 365; *Stubblefield v. Hagerty,* 1 Ala. 38 ; *Mims v. Parker, Ib.* 421 ; *Foster v. Walker,* 2 Ala. 177; *Fortune v. State Bank,* 4 Ala. 385 ; *Blair v. Rhodes,* 5 Ala. 648 ; *Price v. Thomason,* 11 Ala. 875. If an answer is evasive, it may be stricken from the file for that cause, and judgment *nisi* rendered, but no judgment can be rendered upon it.—*Mims v. Parker, supra.* The inquiry then recurs, do the statements of Kahn's answer, show, in judgment of law, a clear, distinct admission of an indebtedness due and owing by him to the defendant? Appellants' counsel have not argued the question upon which, it seems to us, the controversy turns. It is not a question, we conceive upon the facts disclosed by the answer, whether the garnishee had been released by the corporation from a binding contract of subscription for $2,500 of the capital stock of the Alabama Terminal and Improvement Company, but rather, whether he had ever entered into such a contract. Without deciding anything touching such a release, it would seem to the writer, that the assent or acquiescence of existing corporate creditors would be necessary, in order to bind them, when the release is founded upon no other consideration than a mere relinquishment of the stock by the subscriber. We let it be conceded, for the purpose of this case, that no such release of the kind occurred. Had the

garnishee entered into a contract binding him to take and pay for the $2,500 of the capital stock of the defendant corporation, as the plaintiffs contend? Assuming (as we may, in favor of the garnishee) that the Alabama Terminal and Improvement Company was organized, as a corporation, under the provisions of the Code, then in force, regulating the formation of general business corporations, the law required that the persons desiring to form the corporation should file with the probate court of the county of the only or principal place of business of the company, a declaration, in writing, signed by themselves, setting forth their names and residences and other matters specified in the statute; whereupon the probate judge was required to issue to the parties, or any two of them, a commission constituting them a board of corporators, giving them authority to open books of subscription to the capital stock of the proposed company, and requiring them to give notice, to be prescribed by the judge, of the times and places of opening the books of subscription. Upon obtaining *bona fide* subscriptions for at least fifty per cent. of the authorized stock, the board of corporators was required to call the subscribers together, who should proceed to organize the company by electing directors, who should, in turn, elect specified corporate officers. Upon the completion of this organization, and the payment by the subscribers to the treasurer, or other designated person, of twenty per cent. of the amount subscribed, the board was required to certify the facts to the judge of probate, who should thereupon issue to the company a certificate of due incorporation. Thus, we see, the persons composing this board were the lawfully appointed agents to make with others, in behalf of the proposed corporation, contracts of subscription for its capital stock. They alone were authorized to bind the company in that behalf, and any such contracts, shown to have been entered into by them, would bind both the company and the subscriber. A subscription taken by a person or persons, other than this board, during the process of organization, would be unauthorized, possessing no binding efficacy upon the corporation, unless and until by it ratified and adopted, in a lawful way. On the part of the subscriber, it could rise no higher than an offer to take the stock, revocable by him, at any time before adoption or acceptance by the corporation. The an-

[White *et al.* v. Kahn.]

swer of the garnishee discloses the following facts : Some time in the summer of 1887, a Mr. Stern went into the store of garnishee and said to him : "Let us go over to Mr. Wiley's office and meet a few gentlemen; they are going to start a company to build a railroad ; we want to see how much stock we can get up for it." Garnishee went to Mr. Wiley's office with him, and they there met Mr. Roman, Mr. Woolfolk, and E. B. Joseph. These gentlemen were talking about there going to be millions and billions in it. They then handed around a paper (which is attached to the answer, and will be set out in the statement of facts by the reporter) and said, "put down whatever you want, with the privilege to change the amount any time whenever you wish." Thereupon, garnishee signed the paper, saying he would take $5,000 with privilege of changing it when the time came for settlement. Roman and Joseph subscribed at same time. He then left the office. Afterwards, and before the time came for settlement, he told the president of the company, Mr. Woolfolk, that he would only take $2,500. Woolfolk replied that it mattered not, as they could place all their stock. Afterwards, in August, 1887, garnishee gave his note to the company for $2,500, payable on a contingency, and showing on its face that it was for garnishee's entire subscription to the capital stock of said company. This note was accepted by the company, by it assigned to another, and by the assignee collected of the garnishee by suit. Garnishee never signed any book of subscription, or other paper than as above stated. Two calls of five per cent. on $2,500 were severally made on him by the company, which he paid before paying the note to the assignee. The company never claimed of him any more than the $2,500, for which he gave his note. Garnishee was not present, at the organization of the company. Was present at only one meeting of the company, which was in the fall of 1891. He then saw Woolfolk preside as president of the company. The foregoing comprises every material fact disclosed by the answer, and, they leave the case, it seems to us, scarcely within the pale of discussion. In the first place, there is nothing to show that Roman, Woolfolk, Joseph and Stern, at the time of the meeting in Wiley's office, had any legal connection whatever with the organization of the corporation, or were authorized, in any manner or form, to receive sub-

scriptions to its capital stock. On the contrary, what they said at the time repels all inference that they were acting, or professing to act, as representatives of the corporation, but shows, by a just inference, that the paper signed by garnishee and others was not intended to be effectuated into a binding contract of subscription, by delivery to, and adoption of, the corporation; and there is nothing in the answer tending to show that it was ever delivered to, or ratified or adopted by, the corporation. It was a paper, we may justly infer from what was said at the time, designed merely as a test of what might be done towards getting up a requisite amount of subscriptions to form a corporation to build a railroad; and, so far as we are advised, it remained in the private possession of the gentlemen who took it, or some, or one of them, we know not whom, until the present plaintiffs got it into their possession. How or from whom they obtained it, does not appear. So far from being shown that Roman, Woolfolk, Joseph and Stern, or either of them, constituted a board of corporators to receive subscriptions for the company, it is not made to appear, that a declaration for incorporation, even, had, at that time, been filed. The inference from what Stern said when he invited garnishee into Wiley's office, is that it had not. When the declaration was filed, who the corporators were, who the board to receive subscriptions, and when the company was organized, we are not informed. Upon these facts, we are bound to hold that the paper supposed by the plaintiffs to be a contract of subscription by garnishee for $5,000, was never executed and delivered by the garnishee so as to become binding upon him. Suppose the stock had risen largely in value, and Kahn, upon the facts he discloses, was now claiming the additional $2,500, with what grace could he make such a demand on the company? If the company was not bound by a contract of subscription, he was not.

It is argued that what was said at the time the paper was signed cannot be considered, by reason of the general rule that antecedent and contemporaneous oral stipulations can not be received to alter or vary the terms of a written contract. The rule has no application when the execution of the writing is the subject of inquiry. It presupposes the due execution and delivery of the writing in a way to bind both parties to its terms. Upon the

[Pugh v. Davis.]

issue of execution *vel non*, what was said and done at the time, and by whom done, are the very vital facts.

Affirmed.