HITSON et ux. v. GILMAN et al.   (No. 9171.)

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 24, 1920. On Motions for Rehearing, March 13, 1920.)

1. Parties ⬥29—All persons interested and affected should be made parties.

In equity all persons interested in the subject-matter and to be affected by the judgment should be made parties, and their rights determined by a single final judgment.

2. Mines and minerals ⬥55(3), 58—Oil lease conferred no estate, but only license or option to enter and develop land.

Oil lease held to have conferred upon the lessee, not an estate in land, but only a license or option to enter upon and develop it for oil and other minerals, to support which option a consideration was necessary.

3. Contracts ⬥53—Adequacy of consideration immaterial in absence of fraud.

Ordinarily, so long as it is something of real value in the eyes of the law, whether or not the consideration is adequate to the promise is immaterial in the absence of fraud, the slightest consideration being sufficient to support the most onerous obligation, since it is competent for the parties to make whatever contract they please in the absence of fraud, deception, or illegality.

4. Mines and minerals ⬥58—One dollar sufficient consideration for oil lease.

In the absence of fraud or deceit upon the lessors, a recited consideration of one dollar for an oil lease, if actually paid, was sufficient, not only to support the option to develop, but also to support such subsidiary options as the privilege of paying rents instead of drilling, etc.

5. Mines and minerals ⬥59—Lessors in oil lease entitled to show recited consideration was not paid, and what true consideration was.

Where the real consideration for execution of an oil lease was the promise of the lessee to drill an oil well within six months, a promise made with specific intent of not fulfilling it, whereby the lessors were fraudulently induced to execute the lease, the lessors attacking the instrument may allege and prove that the recited consideration of one dollar was not paid, and what the true consideration was.

6. Contracts ⬥56 — Certain and obligatory mutual promises may constitute valuable consideration.

Mutual promises may constitute a valuable consideration to support a contract, but to have such effect the promises must not only be mutual, but must also be concurrent, certain, not vague and indeterminate, and must impose a legal liability on each promisor.

7. Mines and minerals ⬥58—No promise on oil lessee's part to drill well or pay rentals to serve as consideration.

Where an oil lessee agreed to commence drilling a well within six months, or to pay to the lessors 25 cents per acre per annum as rentals until a well should be commenced, there was no clear promise on the lessee's part either to drill a well or to pay the specified rentals at any time to serve as consideration for the lease on the theory of mutual promises.

8. Mines and minerals ⬥73—Oil and gas leases are construed in favor of lessors.

Oil and gas leases, contrary to the general rule, are construed in favor of the lessors.

9. Mines and minerals ⬥78(2)—Forfeiture of oil and gas lease for failure to develop not inhibited by equity.

Because of the vagrant and fugitive nature of oil and gas, and the opportunity of an oil and gas lessee to injure the lessor by delaying development, the ordinary rule that equity abhors a forfeiture does not apply to an oil and gas lease under which the lessee wrongfully fails to develop.

10. Mines and minerals ⬥78(2)—Oil lessee not entitled to delay development unduly by paying rentals.

Under an oil lease calling for drilling of a well within six months, or payment of 25 cents per acre per annum as rentals until commencement of a well, the lessee, by paying rentals, cannot unduly delay development of the property, the provision for rentals being in the nature of a privilege enabling the lessee to avoid forfeiture where drilling is delayed because of some equitable reason, the payment of

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the rentals merely constituting consideration for the delay during the period covered, and not supplying the place of an original consideration for the lease, the privilege being but an option which must be supported by an original consideration.

**11. Mines and minerals ☞59—Acceptance by oil lessors of rentals paid in place of drilling did not estop lessors from claiming want of original consideration.**

In the absence of supporting evidence, mere acceptance by oil lessors of rentals paid by the lessee because of not having drilled a well did not estop the lessors from pleading and proving want of original consideration for execution of the lease; the payment of the rentals amounting only to consideration from the lessee for a right or option to delay performance of the contract, by drilling during the period covered by the payment.

**12. Estoppel ☞56—No estoppel in pais unless matters influenced conduct.**

To constitute an estoppel in pais, it must be shown that the matters claimed to constitute an estoppel in some material respect have influenced the conduct of the party invoking the estoppel.

**13. Mines and minerals ☞74—Sublessees under oil lease not within protection of rule in favor of innocent purchasers without notice.**

An oil lease giving the lessee right to drill for oil within six months, and, in the alternative, to pay 25 cents an acre rentals per annum, confers a mere right or equity, and sublessees, as against the lessors attacking the original lease, cannot claim that they are within the rule of protection of purchasers for value without notice of the vice in the original consideration in the original lease, since such rule extends only to cases where the purchasers have taken a conveyance.

**14. Appeal and error ☞917(3)—Presumption is that exception to clause of petition was not sustained on a statutory ground which had been repealed.**

Vernon's Sayles' Ann. Civ. St. 1914, arts. 1829a, 1829b, requiring verification of a plaintiff's original pleading having been repealed by Acts 34th Leg. (1915) c. 101, the Court of Civil Appeals should assume that the trial court's order sustaining exception to a clause of the petition was not based on the ground that the petition was not verified by affidavit.

**15. Mines and minerals ☞74—Oil lessors after assignments by lessee not entitled to have rentals paid as whole.**

Where an oil lease calling for drilling of a well by the lessee within six months, or payment of certain rentals, provided expressly that the lessee might assign all or any part of the land, any assignee of part of the original lease was entitled to protect his own lease by paying his proportionate part of the rentals at the rate per acre specified in the original lease; the lessors not being entitled to have rental installments, after assignments by the lessee, paid as a whole.

On Motions for Rehearing.

**16. Mines and minerals ☞58—Advance payment under agreement between oil lessors and sublessee not constituting consideration to support original lease.**

Agreement between original oil lessors and an oil company, assignee of part of the original lease from the lessee, *held* merely intended to relieve the oil company from hazard of default in payment of rentals on the part of any sublessee other than the company, and to extend the time within which it would be required to drill a well on its quarter section until a certain date; the advance payment accompanying the agreement not constituting sufficient consideration to the lessors to support the original lease in so far as the interest of the company was concerned.

**17. Mines and minerals ☞74—Oil sublessees paying rentals not protected as innocent purchasers for value against lessors claiming want of consideration for lease.**

If payment of oil lease rentals by sublessees merely afforded consideration for the option given the original lessee to extend the period within which he would be required to drill for oil, such payment of rentals did not constitute the sublessees innocent purchasers for value, without notice of the infirmity in the original lease that it was not supported by consideration, and thereby protected as against the lessors.

**18. Mines and minerals ☞74—Oil sublessee not necessarily innocent purchaser for value.**

The mere fact that an oil company, sublessee of part of an oil lease, paid valuable consideration for its sublease, without proof of want of notice or knowledge of the defense of want of consideration to which the original lease was subject, or other circumstances showing good faith in the sublessee company, was not sufficient to establish the defense of innocent purchaser for value from the original lessee as against the original lessors setting up the want of consideration for the lease.

**19. Mines and minerals ☞74—Sublessees of oil lease affected with notice of form and effect of original lease.**

Sublessees of parts of an oil lease were affected with notice of the form and legal effect of the original lease to their assignor.

Appeal from District Court, Eastland County; Joe Burkett, Judge.

Suit by W. T. Hitson and wife against R. F. Gilman and others. From judgment for defendants, plaintiffs appeal. Reversed, and cause remanded.

Alexander & Baldwin, of Ft. Worth, and R. L. Rust, of Eastland, for appellants.

Scott, Brelsfort & Smith, of Eastland, for appellee Prairie Oil & Gas Co.

Robert D. Garver, of Ft. Worth, and S. W. Marshall, of Dallas, for appellee Empire Gas & Fuel Co.

Butts & Wright, of Cisco, for appellee Ohio Cities Gas Co.

J. R. Stubblefield, of Eastland, for other appellees.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

CONNER, C. J. This suit was instituted on the 30th day of September, 1918, by W. T. Hitson and wife, as plaintiffs, against defendants, R. F. Gilman, Prairie Oil & Gas Company, Sun Company, Ohio Cities Gas Company, Empire Gas & Fuel Company, H. L. Mobley, and B. G. Dawes. By amended petition, filed November 29, 1918, the plaintiffs alleged that on June 24, 1916, they were the owners by fee-simple title of 1646 acres of land in Eastland county, Tex., describing the land; that on said date the plaintiffs entered into a certain lease contract with defendant Gilman, covering said land, and alleged that the other defendants named were claiming some interest in said lands under some kind of a transfer from defendant Gilman.

The plaintiffs sought to cancel this lease as to all the land upon several grounds, among them being: (1) That the lease was procured by fraudulent misrepresentations, relied upon by plaintiffs; (2) that the instrument recited a consideration of one dollar, but that this was not paid, and the real consideration was that a well would be drilled within six months, which was not done, and the contract was without consideration; (3) that the contract was unilateral and void in not binding Gilman to do or perform anything, neither to drill nor pay rental; (4) that the contract was unilateral and void for want of mutuality in providing that "upon the payment of one dollar lessee shall have the right to surrender this lease and thereafter shall be released and discharged from all payments, obligations, covenants and conditions herein contained, whereupon this lease shall be null and void," and that plaintiffs were entitled to the same option and had tendered one dollar to each defendant and were thereby released from said contract; (5) that said lease provided for payment of quarterly rental beginning December 24, 1916, on the entire premises, and the failure to pay any installment should be a complete surrender of said lease, and that the quarterly rental due September 24, 1918, had not been paid, and plaintiffs declared the lease forfeited for that reason. A copy of the lease was attached to plaintiffs' petition as an exhibit.

Plaintiffs prayed for judgment canceling said lease as to all defendants, for the quieting of title, and for general and special relief.

The defendant Prairie Oil & Gas Company answered by plea of misjoinder of parties, presented numerous exceptions, and specially that it only claimed 160 acres of the lease involved which had been duly assigned to it for a valuable consideration without notice of any of the facts alleged by plaintiff; that it had paid to plaintiffs the rental due on this 160 acres for one year from March 24, 1918, to March 24, 1919, setting up a receipt for same from plaintiffs and pleading estoppel against plaintiffs by reason thereof;

also, by way of cross-action prayed for judgment of the court establishing the validity of the assignment under which it claimed.

Defendants the Ohio Cities Gas Company, the Empire Gas & Fuel Company, and Gilman and Mobley, presented substantially the same exceptions as did the Prairie Oil & Gas Company, and also severally set up title to separate parcels of land, and also pleaded payment and tender of rentals required by the lease, and averred that the lease contract to Gilman stated the true terms of the agreement.

Service of citation on the Sun Company and B. G. Dawes was not in time for the trial. The court, however, over the objection of the plaintiffs, continued the case as to the Sun Company and Dawes to perfect service of citation, and also continued the case as to the defendants Mobley and Gilman, but required the case to proceed to trial as against the Prairie Oil & Gas Company, the Empire Gas & Fuel Company, and Ohio Cities Gas Company; these defendants being granted a severance for the purpose of immediate trial. The case was tried before the court without a jury, and judgment rendered for the three defendants in whose favor the severance had been granted, and the plaintiffs have appealed.

[1] By their first two assignments, plaintiffs insist that they were entitled to continue the entire case in order to perfect service on the defendants the Sun Company and Dawes, and that the court erred in granting severance to the companies named. We have concluded that the judgment must be reversed on another ground involving, as we think, a very material question going to the merits, and hence we pass these two assignments with but brief notice, in view of the fact that the objections mentioned in the first and second assignment will not likely again arise, it being certainly true that by the time of another trial service of citation will have been perfected upon the Sun Company and Dawes, and, all parties being then before the court, it is not probable that any reason will exist for separate trials among the defendants. We will, however, in passing, refer to the well-established rule in equity that all persons interested in the subject-matter and to be affected by the judgment should be made parties and their rights determined by a single final judgment; and to further observe that in this case, unlike some of the cases cited in behalf of appellees, the titles of the several defendants are not wholly distinct and independent of each other, but must at last rest upon the lease of the plaintiffs to the defendant Gilman. Ferguson v. Dickinson, 138 S. W. 221; 4 R. C. L. p. 517, § 29; 2 Black on Rescission, p. 1503, § 658; Moore v. Jennings, 47 W. Va. 181, 34 S. E. 793.

This brings us to the controlling question presented on this appeal. It is presented by

appellants' third assignment of error which reads as follows:

"The court erred in refusing to allow the plaintiff to testify while on the witness stand that he did not receive the one dollar consideration mentioned in the lease contract, for the reasons shown by bill of exception No. 12, here referred to and requested to be considered a part hereof."

The record shows that, while the plaintiff W. T. Hitson was on the stand testifying in his own behalf, he was asked the following question:

"At the time this lease contract was made, did you, or not, receive the consideration recited in the lease as having been paid?"

To which question the witness would have answered, "No, I did not." Defendants objected to said question and the answer thereto, "because the petition was not sworn to and because it was immaterial as to defendants then before the court." The objections were sustained by the court, and the witness was not allowed to answer the question; to which action and ruling of the court the plaintiffs then and there duly excepted, and here assign error as above stated.

We will here notice such provisions of the original lease from the plaintiffs to the defendant R. F. Gilman as we think pertinent. In a general way, it may be said that it is much the same as the usual oil lease. It recites, however, that—

"The lessors in consideration of one dollar, 'the receipt hereof is hereby acknowledged, does hereby grant, demise, and let unto the said lessees all the oil, gas, gold, silver, coal, lead, and zinc, in and under the following described tract of land with covenant for the lessee's quiet enjoyment for the term, * * * together with the exclusive right unto the lessee to operate and drill for and mine oil, gas, silver, coal, lead and zinc, to lay and maintain pipe lines. * * *

"To have and to hold unto and for the use of lessee for the term of five years from the date hereof and as much longer as gas, oil, gold, silver, coal, lead or zinc is produced in paying quantities, yielding to the lessor one-eighth of all the oil produced and saved from the premises delivered free of expense into the tanks or pipe lines to the lessor's credit."

The lease further provides:

"The lessee (Gilman) agrees to commence drilling a well on the above-described premises within six (6) months from the date hereof, or to pay to the lessors twenty-five (25) cents per acre per annum as rentals on and for said premises payable quarterly in advance from the 24th day of December, 1916, until a well shall be commenced on said premises, or this lease contract surrendered, which surrender shall be complete upon the failure of the lessee to pay any installment of rentals when due, and the drilling of a well on said premises shall be full consideration to the lessors for the grant herein made to the lessee, with the exclusive right of the lessee to drill as many additional wells on said premises during the life of this lease as he may desire thereon."

The lease further provides that the lessee shall have the "right of subdividing and releasing all or any part" of the land described in the lease, and also that—

"Upon the payment of one dollar lessee shall have the right to surrender this lease and thereafter shall be released and discharged from all payments, obligations, covenants and conditions herein contained, whereupon this lease shall be null and void; and that all conditions, terms and limitations between the parties hereto shall extend to their heirs, personal representatives and assigns."

[2, 3] The legal effect of the lease, under the case of Oil & Pipe Line Co. v. Teel, 95 Tex. 586, 68 S. W. 979, later referred to without disapproval in the case of Texas Co. v. Daughery, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989, is clearly to confer upon the lessee Gilman, not an estate in land, but only a license or option to enter upon the land described in the lease and develop it for oil and other minerals. To support that option there must be a consideration. In the case before us, the instrument recites a consideration of one dollar. If this was a case of the ordinary lease between landlord and tenant, it would indeed seem to be insignificant and wholly immaterial, as appellees in one of their arguments insist. Ordinarily, so long as it is something of real value in the eye of the law, whether or not the consideration is adequate to the promise is immaterial in the absence of fraud. The slightest consideration seems to be sufficient to support the most onerous obligation; the inadequacy, as has been said, is for the parties to consider at the time of making the agreement, and not for the court when it is sought to be enforced. It is competent for the parties to make whatever contracts they may please, so long as there is not fraud or deception or infringement of law. Hence the fact that the bargain is a hard one will not deprive it of validity. 13 Corpus Juris, p. 365, § 237.

[4, 5] It has often been decided in our own courts, even in cases of involuntary sales, as under execution, that a sale will not be set aside in the absence of some fraud or irregularity on account of inadequacy of consideration unless the inadequacy is so great as to shock the conscience. The principles so stated would seem to have force when seeking to test the sufficiency of the consideration to support an oil lease that amounts to no more than an option. See Oil & Pipe Line Co. v. Teel, supra; Quebe v. Ry. Co., 98 Tex. 6, 81 S. W. 20, 66 L. R. A. 734, 4 Ann. Cas. 545; Gregory v. Ry. Co., 155 S. W. 648; Lawrence v. McCalmont, 2 How. 426, 11 L. Ed. 326.

It was material therefore for the plaintiffs to allege and prove, if they could do so, that the consideration recited in the lease had in

fact not been paid; otherwise this ground of attack must fail. If in fact the recited consideration was paid, it must be held, we think, under the authorities referred to, that it was sufficient not only to support the option given for the development of the land, but also sufficient to support the subsidiary or correlated options contained in the instrument such as the privilege of paying rents, etc. The plaintiffs in their petition alleged, not only that the recited consideration of one dollar had not been paid, but also alleged that the real consideration for the execution of the lease was the promise of Gilman to drill an oil well on the land in question within six months; in this connection further alleging that Gilman made the promise with the specific intent at the time of not fulfilling it and thereby fraudulently induced plaintiffs to execute the lease. In such case, it is undoubtedly true that the party attacking the instrument may allege and prove that the recited consideration was not paid and what the true consideration was. 10 R. C. L. p. 1042, § 236 et seq; Lanier v. Foust, 81 Tex. 186, 16 S. W. 994; Taylor v. Merrill, 64 Tex. 494; Tipton v. Tipton, 47 Tex. Civ. App. 619, 105 S. W. 830; U. S. Gypsum Co. v. Shields, 106 S. W. 725; History Co. v. Flint, 15 S. W. 913; Dairy Ass'n v. Mears, 123 Mich. 470, 82 N. W. 258; White v. Kahn, 103 Ala. 308, 15 South. 595.

[6, 7] It cannot be said, we think, as appellees in some of their contentions in effect urge, that the exclusion of the proffered testimony was also immaterial, for the consideration other than the recited one was shown. There is no basis in the evidence for such a contention, unless it can be said that there was some promise on appellee Gilman's part in legal effect amounting to a consideration, or unless the subsequent payment of rentals, as shown by the record, are to be construed in effect as supplying the want of an original consideration. But we think neither of these positions can be maintained. It is true mutual promises may constitute a valuable consideration to support a contract, but to have that effect the promises must not only be mutual, but they must be concurrent, must be certain and not vague and indeterminate, and must impose a legal liability on the person making the promise. See 13 Corpus Juris, p. 327, §§ 170, 273, inclusive, and cases cited in notes. Tested by these principles, no promise on the part of Gilman is found that fulfills the requirements. The whole attitude of the appellees in the case is a denial of any promise on the part of any party to the suit not to be found within the terms of the lease under examination. To repeat, the language of the lease is:

"The lessee agrees to commence drilling a well on the above-described premises within six months from the date hereof or to pay to the lessors twenty-five (25) cents per acre per annum as rentals on and for said premises payable quarterly in advance from the 24th day of December, 1916, until a well shall be commenced on said premises, or this lease contract surrendered, which surrender shall be complete upon the failure of the lessee to pay any installment of rentals when due."

It seems plain that the language quoted does not amount to a clear promise on Gilman's part to either dig a well or to pay the specified rentals at any time. The promise is merely that he will do one or the other during the continuance of the lease, which may be wholly terminated by a mere failure on his part to pay rentals or by an exercise of the option given in the lease to end it by the payment of one dollar. In neither event, under the terms of the lease, does a mere failure to dig a well or to pay rentals impose a legal liability upon the lessee.

[8-10] It is further suggested, however, that the payment of several installments of rental, which the evidence shows had been regularly paid to and accepted by appellant W. T. Hitson, until at least the quarterly installment in September, 1918, constitutes a consideration supporting the lease, and that hence the exclusion of the proffered evidence is immaterial, for this reason also. But we do not adopt this suggestion. Oil and gas leases, contrary to the general rule, are construed in favor of the lessors. Emery v. League, 31 Tex. Civ. App. 474, 72 S. W. 603; Aycock v. Reliance Oil Co., 210 S. W. 848; 18 R. C. L., Mines, § 115, p. 1214. Because of the vagrant and fugitive nature of oil and gas, their liability to wander or be drawn elsewhere, if not developed, and the opportunity of the lessee to injure and oppress the lessor by delaying development, the ordinary rule that equity abhors a forfeiture does not apply. Risch v. Burch, 175 Ind. 621, 95 N. E. 123; Howerton v. Kansas Natural Gas Co., 81 Kan. 553, 106 Pac. 47, 34 L. R. A. (N. S.) 34; Hughes v. Busseyville O. & G. Co., 180 Ky. 545, 203 S. W. 515. As applied to and limited by the lease under consideration, the lessee cannot, by paying rentals, unduly delay the development of the property. The provision for rentals is in the nature of a privilege enabling the lessee to save a forfeiture where delayed because of some equitable reason. The payment of the rentals at the several installment periods merely constitutes a consideration for the delay during the period covered by the payment. During such period, after an acceptance of the rental, the lessor may not declare a forfeiture of the lease for the nondrilling of a well. The rental payment amounts to no more than this. We do not think it supplied the place of an original consideration for the execution of the lease. The privilege of paying the rental is but an option, which must receive support by an original consideration. See Owens v. Corsicana Petroleum Co., 169 S. W. 192; Monarch Oil & Gas Co. v. Richardson, 124 Ky. 602, 99 S. W. 668; Dinsmoor v. Combs, 177

Ky. 740, 198 S. W. 58; Warren O. & G. Co. v. Gilliam (Ky.) 207 S. W. 698; Ohio Valley O. & G. Co. v. Irvin Development Co., 212 S. W. 110; Consumers' Gas & Trust Co. v. Littler, 162 Ind. 320, 70 N. E. 363.

[11] Nor do we think, in the absence of other supporting evidence, that we would be justified in holding that mere acceptance of rentals estopped appellants from pleading and proving a want of an original consideration for the execution of the lease as some of appellees, if not all of them, both pleaded and urged. Construing the lease as a whole and its subject-matter, it seems manifest that the paramount inducement or consideration to the lessors was the hope of securing the drilling of oil wells and of receiving a consequent return in the royalties provided for in the lease contract. As we have already seen, the lease under consideration does not in terms specifically require the lessee to dig a well at any time during the term specified in the lease. By its terms, an option was given to him to delay the digging of the well by the payment of rentals specified. This provision, as we have already observed when viewing the lease as a whole and when we consider the almost if not entirely insignificant rental per acre required, makes it manifest that the provision for the payment of rentals was for the benefit of the lessee. By the payment of rentals as specified, he secured the privilege of delay in performance of what may not be inaptly termed the real consideration of the contract, to wit, the drilling of a well. Upon payment and acceptance by the lessor of any installment of rentals, we think the lessor merely waived his right to insist upon the drilling of a well during the period covered by the payment. In other words, the payment of the rental amounted to no more than a sufficient consideration proceeding from the lessee for the right or option to delay performance of the contract during the particular period over which the payment by the terms of the lease extended. Consumers' Gas & Trust Co. v. Littler, supra, and other cases cited in connection therewith.

[12] In order to constitute an estoppel in pais, it must be shown that the matters claimed to constitute an estoppel have in some material respect influenced the conduct of the party invoking the estoppel. Gose v. Coryell, 59 Tex. Civ. App. 504, 126 S. W. 1164. An estoppel cannot be invoked to protect a person from the legal consequences of his act or omission, where such act or omission was in no wise induced by the act or omission of the other party against whom the estoppel is urged. Head v. Pac. Express Co., 60 Tex. Civ. App. 169, 126 S. W. 682. The record fails to show, as we think, with a sufficient degree of certainty, any act, declaration, or omission on the part of appellants, or either of them, which operated as an inducement to either of the appellees to purchase, as they did, the several subdivisions of the original lease

220 S.W.—10

claimed by them, or that operated as an inducement to pay the several installments of rental as stated. It is true that, among other things, there was introduced in evidence in behalf of the Empire Gas & Fuel Company a receipt signed by W. T. Hitson for $20 as rentals from June 24, 1918, to September 24, 1918, reciting that it was "under the terms of certain valid and existing lease for oil and gas purposes, dated June 24, 1916, given by W. T. Hitson and wife to R. F. Gilman on 320 acres in Eastland county." But there is no evidence that the payment was induced by the statement, or that without such assurance the rental would not have been paid. The statement, of course, could not have operated as an inducement to the Empire Gas & Fuel Company to make its original purchase, and certainly cannot be said to have operated as an estoppel in favor of the appellees not parties to the receipt. So far as it appears from the record, it amounts to a mere reference to Hitson's lease as a "valid and existing" one after the performance of every act that could operate to the prejudice of the Empire Gas & Fuel Company. At least, as we have already indicated, the evidence on this issue is not sufficiently clear and satisfactory to justify us in overruling the assignment of error that we have been discussing and affirm the judgment in favor of all the appellees.

[13] Nor yet can it be said that the appellees are purchasers for value without notice of the vice in the original lease urged by appellants. This question seems to be settled adversely to appellees' contention by the case of Oil & Pipe Line Co. v. Teel, to which we have referred several times. A contract of the kind under consideration is there held to confer a mere right or equity, and it is said, among other things, that—

"It appears very clear from the authorities that the protection given to purchasers for valuable consideration without notice extends only to cases where they have taken a conveyance, or, in other words, where they have purchased the legal title," citing authorities.

And further said:

"But where the purchase is only of the equitable, it is taken with all its imperfections and equities, notwithstanding a valuable consideration may have been given and there may have been no notice of the equity or defense against the title. * * * When it is asserted that a purchaser for a valuable consideration takes the title free of every trust or equity of which he has no notice, it is intended of the purchase of a title perfect on its face; for every purchaser of an imperfect title takes it with all its imperfections on its head. It is his own fault that he confides in a title which appears defective, and he does so at his peril."

In further support of the conclusion, the able judge who wrote that opinion observed that instruments, such as here, being merely contracts by which an interest in lands could be secured, fell within the rule of "written

instruments not negotiable by law," as to which article 584 of our Revised Statutes provides that an assignee thereof might maintain an action thereon in his own name, but that he should be required to allow every discount and defense against the same which it would have been subject to in the hands of any previous owner before notice of the assignment was given to the defendant.

Finally, it is insisted that inasmuch as the court had sustained a special exception to that part of plaintiffs' petition which set up the fact that the consideration in the recited lease had never been paid, and of which ruling no complaint is here urged, that there was left no allegation in the petition which warranted the admission of the testimony to the effect that the lessee Gilman in fact paid no consideration for the lease. The clause of the petition to which this contention relates reads as follows:

"That said instrument recited a consideration of one dollar paid by defendant Gilman to plaintiffs, but in truth and in fact said dollar was not paid and no sum of money was paid to plaintiffs at the time, but the real consideration was the drilling of wells for oil and gas and the development of plaintiffs' land for said purposes, which has never been done, so that said lease was without consideration, as shown by said pretended lease contract, a copy of which is hereto attached and marked 'Exhibit A' and made a part of this petition, which shows same to be null and void and without consideration and same should be so declared by the court."

To which the following exception was urged:

"(A) It is not verified by affidavit as required by the statute requiring such pleas to be sworn to.

"(B) It appears from the facts alleged in the first paragraph of said petition that the lease was executed by plaintiffs on the 24th day of June, 1916, and in the sixth paragraph of the petition it is alleged that, under the terms and conditions of the lease, if no well be commenced on the lands of plaintiffs within six months after the lease was executed, to wit, on or before December 24, 1916, the lease might be kept alive and in force and effect by the lessee paying to the plaintiff an annual rental of 25 cents per acre on said lands, payable quarterly in advance, the first installment of rentals to become due and payable on the 24th day of December, 1916; and it is not alleged in said paragraph or elsewhere in said petition that no installments of rentals under said lease had been paid by the lessee and accepted and received by plaintiffs and facts alleged in other paragraphs of said petition and have accepted and received rentals under said lease exceeding the sum and amount of $700."

[14] The court sustained the exception, as asserted by appellees. The court's order sustaining the exception does not indicate the ground upon which the exception was sustained. It may have been, and to justify the ruling must have been, upon the grounds stated in section B of the exception. We think we should assume that it was not upon the ground that petition was not verified by affidavit, inasmuch as the act of 1913 (V. S. Tex. Civ. Stats. arts. 1829a and 1829b), requiring verification of a plaintiff's original pleading, such as we have under consideration in this case, was repealed by the act approved March 22, 1915. See General Laws, 34 Legislature, p. 155. Moreover, an implied denial of the payment of a recited consideration arises, it may be said, as an inference from other parts of the plaintiff's petition to the effect that the only consideration for the execution of the lease by appellants was a specific promise to dig a well within six months.

On the whole, therefore, and in opposition to every contention to the contrary, we conclude that the court erred in excluding W. T. Hitson's testimony to the effect that the recited consideration in the lease was in fact not paid by Gilman, and for this error we think the judgment must be reversed and the cause remanded.

[15] In reversing the judgment, however, and in view of another trial, we deem it proper to say that we do not agree with appellant's contention that he was entitled to have rental installments paid as a whole. We think it is to be implied from the express provisions of the lease to the effect that the lessee might assign all or any part of the land described in the original lease that any assignee of a part of the original lease would, other circumstances authorizing, be entitled to protect his own lease by paying his proportionate part of the rentals at the rate specified in the original lease, and this seems to have been the construction placed upon the original lease by the appellants themselves; it appearing that they did receive without complaint a number of quarterly installments from the several sublessees.

It is ordered that appellant's third assignment of error, which we have discussed, be sustained, and for the error pointed out the judgment be reversed and the cause remanded.

BUCK, J., concurs in the conclusion reached, without agreeing with some of the language used.

On Motions for Rehearing.

CONNER, C. J. On March 21, 1918, the Prairie Oil & Gas Company paid rentals as specified in the original lease to Gilman on the 160 acres claimed by the company, and due March 24, 1918. At the same time, the company also paid for three additional quarters, to wit: The sum of $30 covering rentals at the rate specified in the original lease on said 160 acres up to March 24, 1919, taking from Hitson a receipt therefor. At the same time, and as part of this transaction, Hitson

and wife executed and duly acknowledged the following written agreement:

"Agreement, made this 21st day of March, 1918, between W. T. Hitson and E. A. Hitson, his wife, of Cisco, Texas, parties of the first part, and the Prairie Oil & Gas Company, a Kansas corporation of Independence, Kansas, party of the second part, witnesseth:

"Whereas, under date of June 24, 1916, a certain lease for oil, gas and other purposes was executed by and between said W. T. Hitson and E. A. Hitson, lessors, and R. F. Gilman, lessee, covering 1,646⅞ acres, situated in the county of Eastland, state of Texas, which lease is recorded in the lease records of said county in Volume 94, at page 280, and the said lease was made for term of five years, and,

"Whereas, said lease has been assigned to the Prairie Oil & Gas Company as to 160 acres described as the southwest quarter of section No. 69, block No. 4, H. & T. C. R. R. Co. survey in said county and state:

"Therefore, in consideration of one ($1.00) dollar and the mutual covenants of said lease it is agreed between the parties hereto that in event that the lessee or any assignee or assignees of the other part or parts of said lease shall fail or make default in the payment of the proportionate part of the rents due from him or them such default shall not operate to defeat or affect said lease in so far as it covers the above described land held by the Prairie Oil & Gas Company so long as it shall make due payment of its proportion of said rental.

"It is further agreed that the terms and conditions of said lease shall be and remain the same except as herein modified.

"Witness the following signatures the day and year first above written.
　　　　　　　　　　　　"W. T. Hitson.
　　　　　　　　　　　　"E. A. Hitson."

[16] It is urged in a motion for rehearing by the company named that such advance payment was a sufficient consideration to support the original lease to Gilman in so far as the interest of the company was involved, and that therefore the judgment in its favor should be affirmed. After consideration, however, we have been unable to agree with the contention stated. Construing the agreement copied as a whole, we are of the opinion that it is intended to and had the effect of relieving the Prairie Oil & Gas Company from all hazard of a default in payment of rentals on the part of any sublessee other than the company, and to extend the time within which the company would be required to drill a well on its 160 acres until March 24, 1919. The concluding part of the agreement itself expressly declares that the terms and conditions of the Gilman lease should "be and remain the same except as herein modified." The only modification made in the agreement was to extend the option of the company to drill a well for one year instead of one quarter, and to make the company liable for its own default alone. We think the advance payment operated as a consideration to support this

agreement rather than to relate back and support the original lease to Gilman. Nor, for reasons indicated in our original opinion, de we think that this transaction alone can properly be made the basis of an estoppel.

[17, 18] The same company and also the Empire Gas & Fuel Company insist that we were in error in holding that these companies were not purchasers in good faith and for value, and hence that they should be protected as such. In support of this contention, an able brief with numerous citations of authority has been presented to this court by Messrs. Wynn, Johnson, Green & Morgan, amici curiæ. It is insisted that the decision in the Teel Case is wrong, and we are urged to right the wrong. As to this phase of the case, we should say that we perhaps unnecessarily noticed this alleged defense in our original opinion for the reason that the Empire Gas & Fuel Company presented no such plea to the lower court, and, while the Prairie Oil & Gas Company did present such plea, it was not supported by any proof further than a showing that it had purchased its lease on the 160 acres for a valuable consideration and had paid rentals. If we were right in holding, as we did originally, that the payment of rentals merely afforded a consideration for an extension of the option given to the lessees in the original lease to extend the period within which they would be required to drill a well, and we are not disposed to revise our ruling on this point, then the payment of rentals alone would not constitute the lessees and sublessees innocent purchasers for value and without notice of vice, which forms the foundation of the attack upon the original lease. Nor would the single additional fact that the Prairie Oil & Gas Company paid a valuable consideration for its lease without proof of a want of notice or knowledge of the defense to which the original lease was subject, or other circumstances showing good faith, be sufficient to establish the defense. And to do this it was not only necessary to allege, but also to prove, that the lessee purchased in good faith for a valuable consideration and without notice of any vital defect or defense in the original lease. Watkins v. Edwards, 23 Tex. 443; Bremer v. Deffenbaugh et al., 60 Tex. 152; Vickers v. Carnahan, 4 Tex. Civ. App. 305, 23 S. W. 338.

[19] Moreover, the sublessees were certainly affected with the form and legal effect of the original lease to Gilman, and, if we were right, as we think we were, in holding that the lease from the Hitsons to Gilman did not convey a legal title, but on the contrary amounted to no more than an option or "lease contract," as it is designated at one place in the lease itself, then under the operation of the Teel Case, which we feel it our duty to follow whatever may be the construc-

tion given such leases by courts of other jurisdictions, the defense under discussion is not available. We find ourselves unable to distinguish in any vital particular the lease here under consideration and the one considered by the court in the Teel Case, decided by our Supreme Court, and the decisions of the Supreme Court are controlling with us.

We conclude that the motions for rehearing must be overruled.