Appeal of **WILLIAM ROBERT FARMER.** Docket No. 720.

The taxpayer, owner in fee of land, leased the same for approximately $1 per acre for the purpose of exploration for oil and gas. He deducted from the amount so received from his lessees $1 per acre, as cost to him of the leasehold estate demised. *Held:* Commissioner committed no error in disallowing the deduction claimed by taxpayer.

Submitted February 4, 1925; decided March 9, 1925.

*Walter W. Stevens, Esq.*, for the taxpayer.

*A. H. Fast, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before IVINS, KORNER, and MARQUETTE.

This appeal involves income taxes for the calendar year 1918. The Commissioner determined that the amounts received by taxpayer in consideration for certain oil and gas leases executed by him, covering lands of which he was the owner in fee, constitute taxable income, and that the taxpayer is not entitled to deduct therefrom a valuation of $1 per acre on the leased premises as cost to the taxpayer of the leased premises. The Commissioner determined that a deficiency in tax exists for the year in question and the taxpayer appealed therefrom.

### FINDINGS OF FACT.

1. The taxpayer is a citizen and resident of the State of Texas. In the year 1915 he purchased title in fee to 4,428 acres of land in Archer and Young Counties in the State of Texas. In the year 1917 he made similar purchases in the amount of 4,468 acres. Likewise, in the year 1918 he purchased 1,021 acres. His total purchases amounted to 9,913 acres. The record does not disclose the purchase price paid by the taxpayer for these lands.

2. In the year 1912, three years before the taxpayer acquired it, the tract of 4,428 acres above referred to (less 80 acres) was leased for oil and gas purposes by the then owner for $5,000 cash. The period and terms of this former lease are not disclosed.

3. During the months of October and December, 1918, the taxpayer leased all the lands referred to in paragraph 1. This was effected by the execution of several leases to three several parties. These leases were executed in form similar in all material particulars to what is commonly known in the State of Texas as Producers Form 88. The pertinent provisions of these leases, all of which are similar in form, are as follows:

Form 88—Producers.

## OIL AND GAS LEASE.

AGREEMENT, made and entered into 4th day of October, 1918, by and between W. R. Farmer and wife Maggie H. Farmer of Olney, Young County, Texas, party of the first part, hereinafter called lessor (whether one or more) and W. P. Reynolds, party of the second part, lessee

WITNESSETH, That the said lessor, for and in consideration of Three hundred Twenty no/100 Dollars cash, in hand paid, receipt of which is hereby acknowledged and of the covenants and agreements hereinafter contained on the part of the lessee to be paid, kept and performed, has granted, demised, leased and let and by these presents does grant, demise, lease and let unto the said lessee, for the sole and only purpose of mining and operating for oil and gas, and laying pipe lines, and building tanks, powers, stations and structures thereon to produce, save and take care of said products, all that certain tract of land  *  *  *  (description).

It is agreed that this lease shall remain in force for a term of 5 years from this date, and as long thereafter as oil or gas, or either of them, is produced from said lands by the lessee.

In consideration of the premises the said lessee covenants and agrees:

1st. To deliver to the credit of lessor, free of cost, in the pipe line to which he may connect his wells, the equal one-eighth part of all oil produced and saved from said leased premises.

2d. To pay the lessor One Hundred Fifty no/100 ($150) Dollars each year in advance, for the gas from each well where gas only is found, while the same is being used off the premises  *  *  *

3d. To pay lessor for gas produced from any oil well and used off the premises or for the manufacture of casing-head gas Ten no/100 ($10.00) Dollars per year, for the time during which such gas shall be used, said payments to be made each three months in advance.

If no well be commenced on said land on or before the 4th day of October 1919 this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit in the First National Bank, at Olney, Texas, or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of One Hundred Sixty no/100 Dollars which shall operate as a rental and cover the privilege of deferring the commencement of a well for six months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privileges granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred.

Should the first well drilled on the above described land be a dry hole, then and in that event, if a second well is not commenced on said land within twelve months from the expiration of the last rental period which rental has been paid, this lease shall terminate as to both parties, unless the lessee on or before the expiration of said twelve months shall resume the payment of rentals in the same amount and in the same manner as hereinbefore provided. And it is agreed that upon the resumption of the payment of rentals, as above provided, that the last preceding paragraph hereof, governing the payment of rentals and the effect thereof, shall continue in force just as though there had been no interruption in the rental payments.

*        *        *        *        *        *        *

4. The number of acres so leased by the taxpayer was 9,913, for which he received the sum of $10,168.25. In making his return of income for purpose of taxation, the taxpayer deducted $9,913 from the amount of $10,168.25, above mentioned, and reported the difference as income from the leases in question, claiming that $9,913 (i. e., $1 per acre on 9,913 acres) represented the leasing value of oil and gas rights in the land at the time he acquired the fee simple title therein, and that he is entitled to allocate, of the cost of his

fee title, the sum of $1 per acre to the leasing value of the oil and gas rights. Accordingly, he deducted the amount of $9,913 as cost to him of the leasehold rights demised and leased in the leases above referred to. The Commissioner disallowed this deduction as cost, and held the amount of $10,168.25 to be rental received from land owned by the taxpayer in fee, and as such constituting income to the taxpayer. Accordingly, the Commissioner determined a deficiency in tax for the year 1918 and notified the taxpayer to that effect by registered letter dated September 24, 1924. The taxpayer appealed to this board. Petition was filed November 19, 1924.

DECISION.

The determination of the Commissioner is approved.

OPINION.

KORNER: The taxpayer contends, (1) that when he purchased the lands in fee there was a known market value in the vicinity for the sale of oil and gas leases of $1 per acre, and that he should be allowed to allocate his cost of purchase between the value of the land and the value of his privilege to lease the land for oil and gas exploration and exploitation; (2) that the leases executed by him constituted a horizontal severance of the premises and were a conveyance in fee of the oil and gas in place beneath the surface at a definitely ascertained selling price, and (3) that from such definitely ascertained selling price he is entitled to deduct, as cost, the value allocated by him to the oil and gas leasing privileges pertaining to the land when he purchased it.

No evidence was introduced to throw light on the circumstances surrounding the purchase of this land by the taxpayer. It was merely stated that he purchased the land in fee. The purchase price was not evidenced. The taxpayer states his position on the first point as follows: " For example, if I paid $10 per acre for this land, I paid $10 for the land with the knowledge that the land was worth but $9 per acre and that the additional $1 per acre was *for the value of the prospective oil and gas rights appertaining thereto and a part thereof.*" He then introduced in evidence a deposition tending to show that in 1912 some 4,348 acres of this land had been leased by its then owner for oil and gas exploration for $5,000. Two witnesses testified by deposition that, in their opinion, based on knowledge of oil-lease values in that vicinity, the land in question had a lease value for oil and gas purposes of $1 per acre at the time it was purchased by the taxpayer.

Does this evidence establish the right of the taxpayer to segregate items of value in his purchase price of a fee simple title to land, and to allocate them as claimed by this taxpayer? In our opinion, it does not. A fee simple title is the highest estate in land contemplated by the law. In such a title all lesser estates, rights, titles, and interests merge. When all such interests so merge there is a complete solidification of title and the various interests going to constitute that title lose their identity and are no longer distinguishable. In thus dealing with *interests* and *estates* in property, we are

faced with an entirely different situation from that where a property has physically divisible values. For example, a man might buy a lot with a building thereon and assign a portion of the value to the land and another to the building. But, having procured a fee *title* to the whole premises, he could not assign one value to his freehold and another to his *privilege* of renting or even selling the building, because the valuation of the freehold would necessarily include within itself the valuation of the privilege growing out of such ownership. So, in the instant case, the freehold estate comprehended every right and privilege appertaining to the land. A right or privilege growing out of such ownership is not susceptible of a separate valuation. It will be noted that the value sought to be allocated here as cost is not a value of the oil and gas in place but a value of the owner's right to lease the land for exploration.

The taxpayer argues that the leases executed by him constitute a severance and sale of the oil and gas in place and the estate created by such leases in the lessee is a determinable fee, and hence that a portion of his purchase price of the freehold should be allocable to the cost to him of such a determinable fee. An examination of the Texas authorities on this point leaves doubt as to the exact status of the estate conveyed by such leases. The Court of Civil Appeals of Texas, in the case of *Jones* v. *Murphy*, 253 S. W. 634 (decided May 16, 1923; rehearing denied June 13, 1923), held that the ordinary oil and gas lease is not, strictly speaking, a lease at all; that it conveys no interest in the land and gives the lessee only an option to drill and extricate the minerals if found; that under an oil and gas lease for a term of five years but providing that if no well is drilled by a stated date the lease should terminate as to both parties, unless the lessee should pay a stated sum as a rental for 12 months from that date, and that the down payment therein mentioned covered not only the privilege granted until the first rental became payable but also lessee's option, and that the sum fixed as rental should be paid each year during the period of the lease. The amount to be paid was not, strictly speaking, a rental, but simply a sum, by the payment of which the lessee acquired the right to extend his option, and the lessee was not required to make payment thereof if he elected not to extend his option.

The Court of Civil Appeals of Texas (March, 1920), in *Hitson et ux.* v. *Gilman et al.*, 220 S. W. 140, at page 143, held that leases similar to those here under consideration confer on the lessee, not an estate in land, but only a lease or option to enter upon the land described in the lease and develop it for oil and other minerals.

The Supreme Court of Texas on June 30, 1923, in *Stephens County et al.* v. *Mid-Kansas Oil & Gas Co.*, 254 S. W. 290, held that leases similar to those here under consideration passed to the lessee a determinable fee in the lands, leaving the lessor the possibility of reacquiring the absolute fee simple title, less whatever mineral may be in the meantime produced and marketed. The court said:

> At common law, a grant of land for such a term and for such use and purpose—and no other—created the estate called a base, qualified, or determinable fee, defined by Kent as "an interest which may continue forever, but the estate is liable to be determined, without the aid of a conveyance, by some act or event, circumscribing its continuance or extent."

It should be noted that the case last cited deals only with the question whether the lessee has a property right in his lease, and defines the extent of such right. With that question we are not concerned here. A mere leasehold constitutes property right as well as a base, qualified, or determinable fee. But be the interest or estate acquired by the lessee what it may, every such interest or estate was included in and merged into the freehold title acquired by the taxpayer out of which such estate or interest was carved. Under the facts presented by this record, we are not concerned with the physical aspects or qualities of the realty purchased by the taxpayer, but only with the title acquired by him. The record discloses that the $1 per acre, which the taxpayer seeks to allocate as cost of the rights granted by him in his lease, was his valuation of his *right to grant an estate subordinate to his freehold*, i. e., his right to carve out of his freehold a base or an inferior estate. This we hold he can not do. A freehold, like a lump of gold, may be partitioned and the fragments apportioned in severalty, but it is not divisible into elements so as to permit a valuation of its elements, because the gold is the element and itself contains all of value there is in it.

In view of the foregoing, it is held that the first contention of the taxpayer must be denied and, in consequence, it is not necessary to consider further the additional contentions raised by him. His whole case is premised on his first proposition, and that failing, his whole case must fall.